Helen L. Anair *v.* The Mutual Life Insurance Company of New York.

February Term, 1945.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed May 1, 1945.

*George L. Hunt* for the defendant.

*A. Pearley Feen* for the plaintiff.

JEFFORDS, J. This is an action of contract for the recovery of total disability benefits under a policy of life insurance issued by the defendant on the life of the plaintiff. The plaintiff had a verdict and judgment below and the case is here on the defendant's exceptions.

The policy was issued October 1, 1926, and provided for certain monthly payments if the insured became totally and presumably permanently disabled before age 60. The annual premium is $128.60 of which it is stated in parenthesis $5.00 is the premium for the double indemnity benefit and $16.15 is the premium for disability benefits.

In 1932 the plaintiff made a claim for total disability payments which were made to her from that time to and including May 5, 1942, when they were stopped; the defendant claiming that the plaintiff was no longer totally disabled. On November 12, 1935, the plaintiff assigned all her right, title and interest in the policy to the Union Savings Bank & Trust Co. Apparently this assignment was filed with the defendant. On November 25, 1935, this bank executed and delivered to the defendant its order which reads as follows:

> "You are hereby authorized and directed to pay to Helen L. Anair, any and all disability benefits that are now due or which may become due under policy No. 3745564 issued by you on the life of Helen L. Anair.
>
> "We reserve the right to revoke this order at any time as to future benefits which may become due;

said revocation to become effective upon written notice thereof to the Mutual Life Insurance Company of New York."

Both the assignment and the order were in effect at the time the case was tried.

The defendant in its answer pleaded three defenses to the plaintiff's complaint. The first was, in effect, that by reason of the assignment the plaintiff had parted with all her right, title and interest in or to the disability benefits under the policy and thus has no right, title or interest therein sufficient to maintain this action in her capacity as the insured, in which capacity only the action has been brought.

The second defense was, in effect, that the order above set forth gave no sole right of action to the plaintiff but required that the bank should be made a party thereto.

The third defense denied any liability under the policy upon the facts in the case.

The defendant requested the court, under P. L. 1581, to correct the alleged fault pointed out in its second defense, and the plaintiff demurred to the first defense.

At the hearing on these defenses the court found upon concession of counsel that the action is brought by the plaintiff in her own right and not by any assignee in her name. The court then denied the defendant's request and sustained the plaintiff's demurrer, with exceptions to the defendant.

The defendant contends that the cause of action is on the policy and not on the order. It says that the policy contract is entire and as it has been assigned in its entirety the provision for disability payments can survive and be enforced only as a part of the policy.

It is true that the right of recovery must have the policy for its basis. The order, however, amounts to a reassignment to the plaintiff from the bank of such rights under the policy as are set forth in the order. By virtue of the order the plaintiff did have a right and interest in or to the disability benefits contained in the policy.

The defendant says that the policy provides for the payment of a single premium and that this singleness of consideration is recognized by our cases as showing an entire contract. But here

we do not have a single consideration within the meaning of these cases. The total premium of $128.60 is shown by the policy to be comprised of three different premiums, one of which for a specific amount is set forth as the premium for disability benefits. Thus the consideration was apportioned to the different covenants contained in the policy. The risks assumed by the defendant under the policy were distinct and severable with different premiums assigned to cover each of them. We conclude that the policy contract in question was not one entire contract, but constituted separate and distinct contracts. *Rosso* v. *N. Y. Life Ins. Co.,* 157 Miss 469, 128 So 343, 69 ALR 883; *Armstrong* v. *Ill. Bankers Life Asso.,* 217 Ind 601, 29 NE2d 415, 953, 131 ALR 769; 1 Am Jur Actions, secs. 105, 106; Ann. 69 ALR 889.

An entire contract may be divisible into parts so that a right of action accrues for a breach of each part. *Mixer* v. *Williams,* 17 Vt 457, 462. Also see *McGowan* v. *People's Mutual Fire Ins. Co.,* 54 Vt 211, 215, 41 Am Rep 843.

Apparently the defendant believed its policy contract was divisible for some purposes at least as it is stated therein that except for non-payment of premiums and except for the restrictions and provisions applying to the double indemnity and disability benefits the policy shall be incontestable after a stated period. In this connection see *Penn. Mutual Life Ins. Co.* v. *Hartle,* 165 Md 120, 116 A 614, 91 ALR 1466, and the annotation which follows in ALR.

The defendant attempts to distinguish the Armstrong case, *supra,* on the ground that the consideration here is single and its component parts are merely stated parenthetically in the policy. It seems to us that when an apportionment clearly appears, the method adopted to show it is immaterial.

If the cases cited by the defendant from other jurisdictions in support of its claim that the policy contract in question is entire and not divisible are contrary to our holdings, it is sufficient to say that we are not inclined to follow them.

Moreover, the rule against the splitting of an entire cause of action being for the benefit of a debtor he may by his consent to a splitting waive his right to enforce the rule. 1 Am Jur 484, sec. 101. In the present case the defendant recognized the order for about seven years and made payments to the plaintiff under it. It

must be taken that it consented to the reassignment of the rights under the policy and waived its rights, if any it had, to raise this rule as a defense to an action based on the reassigned rights. *Manchester Fire Assurance Co.* v. *Glenn,* 13 Ind App 365, 40 NE 926, 41 NE 847, 55 Am St Rep 225.

In support of its second defense, the defendant says that even assuming the plaintiff had a right of action for disability benefits the bank, as sole owner of the policy, was a necessary party to the action and should have been made so upon request under the provisions of P. L. 1581. In making this claim the defendant overlooks the effect of the order from the bank to the plaintiff. As we have seen, the order was a limited re-assignment of the policy rights to disability benefits. It was in force at the time suit was brought and under it all the payments sued for had become due. The plaintiff by virtue of the order was the only person entitled to sue for these payments. Under these circumstances the plaintiff had the right to bring suit in her name only. *Udall* v. *School District,* 48 Vt 588; *Moore* v. *Spiegel,* 143 Mass 413, 9 NE 827.

The defendant argues that it might have been prejudiced by the fact that the bank was not made a party if the bank had revoked its order at any time after suit was brought or should do so even now. It says it is immaterial to the decision of this question of necessary parties that no revocation was or has been made. The answer to this claim lies in the wording of the notice. All the benefits sued for had become due before suit was brought without any revocation of the order. No prejudice to the defendant has resulted or can result from the refusal of the court to grant the defendant's request to have the bank made a party to the action. If different facts had been presented or the limit of recovery had been enlarged, a different ruling on this question might have been called for but there is no occasion to indulge in speculation on this point.

No error has been made to appear in respect to the rulings of the court on the defendant's first and second defenses. Our holdings on these matters dispose of the exceptions of the defendant to the admission of the policy as an exhibit in the case.

At the close of all the evidence the defendant moved for a directed verdict. The first two grounds of the motion were similar to its first and second defenses heretofore dealt with. The remain-

ing grounds of the motion were to the effect that there is no evidence in the case to support a finding that the plaintiff is totally disabled within the meaning of the policy provision and that the evidence shows conclusively that at all material times the plaintiff followed a gainful occupation of managing an apartment house with no impairment which continuously rendered it impossible for her to carry on that occupation.

The evidence in the case viewed favorably to the plaintiff is as follows. When the policy was issued the plaintiff was employed as a stenographer in a law office. The next year she was admitted to the bar of this state. Prior to 1928 she had enjoyed very good health. In that year she had an operation and has been receiving medical treatment ever since. She continued to practice law until her health broke down in 1931. She closed her office in 1932 and in that year made a claim for total disability payments under the policy. She had to give up the practice of law because of a very nervous condition. She developed a fear of people, could not meet them and lost her ability to concentrate. The plaintiff attempted to resume the practice of her profession in 1935 and in 1936 but was unable to do so. In 1935 she had another operation.

In 1939 the plaintiff exchanged a farm that she owned for an apartment house in Burlington. There are eight apartments in the building of which one is occupied by the plaintiff. The house needed repairing and this was done under the supervision of the plaintiff who also attended to the purchase of furniture, various other things, and the renting of the apartments.

The plaintiff collects the rents from her tenants which are brought to her by them and gives receipts therefor. At times one of the tenants has collected rents for her. No janitor service is furnished, there being no need for it. Each apartment has a stove in which oil is burned and the plaintiff keeps the coupons for the various tenants and delivers them to the person bringing the oil. The tenants take care of cleaning the entrance hall and each takes care of his own stove.

When an apartment is vacated the next tenant sometimes takes it without it having been cleaned. When cleaning is necessary the plaintiff hires someone to do the work and merely supervises. When the plaintiff has attempted to do some of the work around the house the result has been that she has had to go to bed and rest.

The various tenants and a neighbor have helped her in various ways in respect to managing the house. They have attended to paying bills for her and have done various chores in and outside of the building. On occasions they have cleaned vacant apartments. This situation has existed since May 5, 1942. Some of the tenants have helped the plaintiff in her own apartment and in doing some of her household duties. The plaintiff has occasionally done some sweeping in the house and has attempted to do some scrubbing. When she has attempted to move or lift furniture she has always suffered for it.

It is necessary for the plaintiff to leave the house three or four times a year for periods of rest. She takes these rest periods so that she will not have the work of taking care of her apartment and preparing her meals. Another reason is that living in a house where there are a number of apartments makes her very nervous. In 1942 she spent four months at the home of a neighbor. In that same year the apartment house was renovated and the plaintiff supervised this work.

When the plaintiff exercises she has a great shortness of breath, has to pant or fight to get her breath if she moves quickly. She is dizzy a great deal of the time. She has a headache much of the time and is very nervous. Knitting affects her breathing and she has been ordered by the doctor not to knit any more. Reading makes her nervous and tired. She does not sleep well and gets a palpitation of her heart if she is nervous or hurries.

In 1942 the plaintiff took a trip by railroad to the middle west. She was away about three weeks. She "had to get away" and thought the vacation trip would do her good but she found the trip was more difficult than she thought it would be.

The evidence which we have recited is taken from the plaintiff's testimony. This testimony was substantially corroborated by other witnesses, for the most part tenants in the apartment house. One witness stated that she had twice seen the plaintiff fall in the yard of the house when she was attempting to do something. This witness also testified to a time when she went to the plaintiff's apartment and found that she had fainted and fallen to the floor. That several times she has stayed over night with the plaintiff as she was afraid to leave the plaintiff alone. These occasions occurred during the year 1942. This and other witnesses testified to

helping the plaintiff do such things as wash dishes as they felt she was not able to do such tasks. There was testimony as to the shortness of breath of the plaintiff, exhaustion from exercise, pain, and palpitation of the heart. These witnesses also testified to helping the plaintiff in various ways in respect to the running of the apartment house. One witness who at the time of the trial was a tenant in the house and had been for nearly two years was asked, "Is there any managing to be done around there?" He replied, "Not much. It seems to run itself quite well." He was then asked, "It has been running itself that way since you have been there?" He answered, "Why yes."

The medical testimony came from three doctors. Dr, Beecher and Dr. Woodruff were called by the plaintiff and Dr. French by the defendant. Their testimony did not differ substantially. All agreed that the plaintiff is suffering from nervous exhaustion known as neurocirculatory asthenia or irritable heart which does not have any organic basis in the heart.

Dr. Beecher testified that the plaintiff first came to him as a patient in 1929 and that he had treated her on occasions, since that time up to 1944. He described an irritable heart as a condition of abnormally easy fatigue. The patient gets tired easily, is apt to have palpitation, shortness of breath, and may have fainting spells, dizziness and pain. That these conditions exist in the case of the plaintiff and have very little likelihood of improving. That the amount of exercise the plaintiff can take without getting into serious difficulties is very limited.

The following questions and answers appear in the cross examination of Dr. Beecher:

"Q.. In other words, (neurocirculatory asthenia) is rarely a totally incapacitating disease is it doctor?

A. Well, you mean continuously?

Q. Yes.

A. In the majority of cases it is continuously disabling.

Q. For how long?

A. Life long.

Q. You don't mean by continuously all the time, do you?

A. No, I don't mean continuously all the time but I mean so far as continued activity is concerned it is disabling.

Q. Well, this trouble doesn't necessarily mean that a person throws up his hands and gives up all activity, does it?

A. No, not all activity. They could sign receipts and checks and things of that sort, a few little incidental things."

Dr. Woodruff who had seen the plaintiff 40 or 50 times since 1935, testified that in the plaintiff's case slight exertion might bring on palpitation of the heart, pain,.and may and does bring on fatigue. That sustained effort, either mental or physical, is likely to bring on a collapse, depending on the degree of the effort. The doctor also stated that the plaintiff cannot engage in any sustained effort, either mental or physical. That the amount of exercise the plaintiff can do without getting into serious difficulties is very limited.

Dr. French differed from the other doctors mainly as to degree of the seriousness of the plaintiff's condition and as to its improvement; the others stating that it had not improved while Dr. French believed it had. All of the doctors agreed that exercise within the tolerance of the patient was beneficial and that treatments of the disease and their results depended largely on each individual case.

The definition of total disability as set forth in the policy is as follows:

"Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation."

This is the first time we have had occasion to construe the provisions of an insurance contract such as the one here involved. *Clarke* v. *Travelers Insurance Co.*, 94 Vt 383, 111 A 449, 450, had to do with an accident policy containing a total disability provision which provided for recovery if the injury "shall independently and exclusively of other causes immediately, wholly, and continuously disable and prevent the insured from performing any and every kind of duty pertaining to his occupation." The same rules which apply in the construction of provisions relating to total disability in accident policies govern in respect to like provisions in life policies. *Metropolitan Life Ins. Co.* v. *Blue*, 222 Ala 665, 133 So 707, 79 ALR 852; *Metropolitan Life Ins. Co.* v. *Daniel*, 64 Ga App 620, 13 SE2d

741; *Plummer* v. *Metropolitan Life Ins. Co.,* 132 Me 220, 169 A 302. Thus what we said on this matter of "total disability" in the Clarke case applies to a large extent in our construction of that provision in the present case.

In the Clarke case the insured was described in the policy as "manager with office and traveling duties." He injured his foot and blood poisoning developed. He recovered a verdict and judgment which was affirmed. This Court held that it could not be said as a matter of law that the plaintiff was not totally disabled under the provisions of the policy relating to total disability and that the evidence made the question of disability one of fact so that the motion for a directed verdict was properly overruled.

In the Clarke case the defendant relied upon certain evidence which showed that the plaintiff went to New York to buy goods for his store and did certain acts while there in furtherance of that mission. This Court said that whether these facts were sufficient to conclude the plaintiff depended upon the construction to be given to the policy provision relating to total disability. The Court then proceeded to construe the provision and we quote quite fully from what was said on that subject, omitting the authorities cited.

> "The provision as to disability in such a policy as this cannot be given a literal construction. To do so would be to hold in effect that the insurer would be liable in no case unless the insured by the accident should lose his life or his reason; for so long as one is in possession of his mental faculties, he is capable of transacting some parts of his business, whatever it may be, although incapable of physical action. The term 'total disability,' or its equivalents, is necessarily a relative term depending in a measure upon the character of the occupation and the capabilities of the insured, and to a large extent upon the circumstances of the particular case. Ordinarily it is a question of fact and not of law. It does not mean absolute physical disability to transact any kind of business pertaining to the insured's occupation. It is fairly supposable that it might be physically possible for the injured party to perform some act relating to his occupation when common prudence would

require him to desist to effectuate a cure. The ability to perform some duty pertaining to his occupation would not in such circumstances defeat his right to indemnity, but he might be totally disabled in contemplation of the insurance contract. Likewise an attempt to perform some of the duties of one's occupation when such an attempt is an indiscretion or an error in judgment would not prevent him from showing that he was totally disabled. An honest effort to labor which ought not in fact to be made should not, nor does it, defeat a right to indemnity under a policy of accident insurance. It is generally held that total disability may exist though the insured is able to perform a few occasional or incidental acts pertaining to his occupation, if he is unable to perform any substantial portion of his work.

"While the courts of last resort are not in complete accord, the weight of authority supports the rule that the insured is totally disabled, even under the terms of an accident insurance policy like the one in question here, if he is disabled from performing the substantial and material acts connected with his occupation. The term as used in such a policy is sometimes defined as inability to perform all the duties necessary to the practical prosecution of one's vocation or business, disregarding all trivial acts which are not material to the prosecution thereof, but which are merely incidental thereto."

The policy in the Clarke case was occupational while that in the present case is non-occupational. The tests as to the extent an insured must be disabled before he can be called totally disabled within the meaning of a total disability clause in the policy are the same in each instance. Consequently such tests as are set forth in the Clarke case we adopt and will apply here.

It is necessary to determine the test or tests to be applied as to the type of work the insured must be unable to perform to come within the terms of the disability provision in the present case. The courts are not all in agreement on the answer to this question. The decisions may be divided into three groups. In

the first it is held that disability exists within the meaning of the provision if the insured is unable to work in his usual occupation, thus, in effect, changing the provision to an occupational disability provision. In the second group the test is declared to be inability to work in any occupation. In the third group an intermediate position is taken. The cases in this group recognize that "total disability" is a relative and not an absolute term or concept. For this reason the cases in this latter group make total disability depend on whether it is shown that the insured is unable to work at or follow an employment or occupation for which he is qualified, mentally or physically, by age, experience, education or training. Under this construction the occupation or work of the insured is included and others similar thereto. See *Erreca* v. *Western States Life Ins. Co.*, 19 Cal 2d 388, 121 P2d 689, 141 ALR 68, and Annotation, 149 ALR 7 at 39. This construction seems to us to be a reasonable one and fair to both the insurer and insured. It is found in principle if not in the exact language which has here been used in the following cases: *Erreca* v. *Western States Life Ins. Co., supra; Dunlap* v. *Maryland Casualty Co.*, 203 SC 1, 25 SE2d 881, 149 ALR 1; *Bullock* v. *Mutual Life Ins. Co.*, 200 NC 642, 158 SE 185; *Brown* v. *Mut. Life Ins. Co.*, Mo App, 140 SW2d 91; *White* v. *Aetna Life Ins. Co.*, 117 W Va 214, 185 SE 236; *Carson* v. *N. Y. Life Ins. Co.*, 162 Minn 458, 203 NW 209; *Adamaitis* v. *Metropolitan Life Ins. Co.*, 295 Mass 215, 3 NE2d 833; *Plummer* v. *Metropolitan Life Ins. Co.* 132 Me 220, 169 A 302. See also the many cases cited in Annotation 149 ALR 7 at 45 et seq. Apparently this rule is recognized in the Clarke case in the third sentence appearing in the above quotation from that case as being the rule to be applied generally.

Ordinarily, as stated in the Clarke case and many other cases, the question of total disability is for the jury. Applying the legal tests which we have set forth to the facts in this case we are unable to say as a matter of law that the plaintiff was not totally disabled in contemplation of the provision of the policy in question. The evidence made the question of the plaintiff's total disability one of fact for the jury under proper instructions.

The jury could reasonably have found under the tests above set forth that the plaintiff was not following the occupation of managing an apartment house in the required sense of ability to per-

form the acts or duties of management. Of all the acts disclosed by the evidence as pertaining to the management of the house in question, and during the time here material, the jury could reasonably have found that the plaintiff was able to do with reasonable continuity only two unassisted by paid or volunteer help; these acts being the giving of receipts for rent and coupons for delivery of oil. The jury could also have found that the plaintiff was unable to perform all the duties necessary to the practical prosecution of the business of managing the apartment house. They could well have concluded that the plaintiff was making an honest attempt to run the house without the physical ability to carry it out. The making of such an attempt would not defeat her right of recovery. *Clarke* v. *Ins. Co., supra.*

In cases such as this which involve a capital investment and its management a test of the total disability of the insured is whether he would be able to procure employment in the open labor market in the same capacity in which he is managing his investments. *Boughton* v. *Mutual Life Ins. Co.,* 183 La 908, 165 So 140; Ann. 149 ALR at p. 77. See also *Brown* v. *Mutual Life Ins. Co.,* Mo App, 140 SW2d 91. It must be apparent that the evidence tends to show that the plaintiff would have been unable to obtain such employment.

As each case must be decided on its own facts there is no necessity of reviewing and distinguishing all of the cases cited by the defendant. The only one which need be noticed is that of *Aronson* v. *Mutual Life Ins. Co.,* 313 Ill App 35, 38 NE2d 976. It is sufficient to say in regard to this case that the apartment house there in question was much larger than the one here and the insured's ailments were much less severe than those of this plaintiff. Moreover, in that case the insured apparently tried to conceal from the insurance company the fact that he was engaged in managing an apartment house.

No error has been made to appear in the ruling of the trial court in denying the motion of the defendant for a directed verdict.

The defendant took several exceptions to the charge. The first was to the submission of the case to the jury. Our holdings on the motion for a directed verdict dispose of this exception.

The court charged that, "Total disability, under the policy

provision here involved, is such a disability which prevents the plaintiff from working with reasonable continuity in her customary occupation or in any other occupation in which she might reasonably be expected to engage in view of her station and physical and mental capacity." The ground for the exception was that the test of total disability as submitted was different from the policy contract test. This portion of the charge comes substantially within the construction we have heretofore given the contract provision. The only words that we here need notice are "reasonable continuity." The cases show that the word "continuously" when used in disability provisions such as the one here is not to be given its literal construction. It is sufficient if the assured is prevented from working, etc. with "substantial continuity," *Carson* v. *N. Y. Life Ins. Co.,* 162 Minn 458, 203 NW 209, or with "reasonable continuity." *Gassett* v. *Metropolitan Life Ins. Co.,* 208 NC 152, 179 SE 438; *Erreca* v. *Western States Life Ins. Co., supra.*

The court also charged that "total disability, within the meaning of the policy here involved, exists whenever the insured is incapacitated from following any substantial or remunerative occupation for which she is fitted or qualified mentally or physically, and by which she is able to earn a livelihood." The grounds of the exception were that the charge was not consistent with the definition of "total disability" contained in the policy and that the clause "by which she is able to earn a livelihood" is inconsistent with another portion of the charge. The tests which we have heretofore set forth and approved for "total disability" dispose of the first ground of this exception.

In response to requests from the defendant the court charged, "whether one's occupation is or is not a gainful occupation, within the meaning of the policy, is not to be decided by whether or not it is financially successful. The expression 'gainful occupation' is to be taken as characterizing an occupation that, if followed, is potentially productive of some kind of gain and not one that necessarily results in gain." The claimed inconsistency relates to this portion of the charge. As we view it, the parts of the charge in question were not inconsistent. The clause, "by which she is able to earn a livelihood," must be read in connection with the rest of the sentence in which it appears. In that sentence the court gave a test for total disability pertaining to the type or

kind of occupation the insured must be unable to follow in order to recover. The quoted clause is used by some courts in constructions of disability policy provisions similar to the construction which we have heretofore given. See *Erreca* v. *Western States Life Ins. Co., supra.* It is apparent that the word "able" was here used as meaning "capable" or "competent" generally to earn a living. That it was not intended to use this word as making the test dependent upon the financial result to the insured from the following of the occupation is demonstrated by the clear definition of a "gainful occupation" given by the court. Under the circumstances it would be unreasonable to hold that the jury might have understood that the above quoted clause was intended to, or did in any way, modify or change this definition.

The court charged that "The disability provision of the insurance policy in this case is designed to provide a substitute for earnings when, because of bodily or mental disease, the insured is deprived of the capacity to earn her living." The ground of the exception was that this charge limits the operation of the policy and implies that it is intended to take care of a situation where the insured is employed and earns wages.

 The purpose of a policy provision of this kind was correctly stated. *Erreca* v. *Western States Life Ins. Co., supra; Bubany* v. *N. Y. Life Ins. Co.,* 39 NM 560, 51 P2d 864; *Carson* v. *N. Y. Life Ins. Co.,* 162 Minn 458, 203 NW 209. The very words of the charge on this point negative the implication claimed by the defendant.

The defendant excepted to the charge that "Duties that are infrequently and intermittently performed in the pursuit of any occupation do not constitute substantial and material acts of an occupation." The grounds of the exception were that if anybody is to pass on that question it is for the jury and that in the light of the policy provision the word "intermittently" as used in the charge and the word "continuously" as used in the policy import two distinct ideas.

 The language used in the charge finds support in the Erreca case, supra. In the Clarke case, supra, it is shown that the ability to perform occasional, incidental or trivial acts of an occupation does not preclude one from recovering under a total disability provision. An instruction to this effect, unexcepted to, was

given in the present case. The instruction in question no more usurped the functions of the jury than the other just referred to. Both were merely guides to the jury in determining the question of total disability. The jury were left free to determine what duties in connection with the management of an apartment house are "infrequently and intermittently performed." The defendant says that the collection of rents is both infrequent and intermittent yet it is a substantial and material act of such management and that the part of the charge now in question deprived it of the benefit of the evidence on that point. The answer to this contention is that the jury were not required by this part of the charge, or otherwise, to consider the act or duty of collecting rentals as "infrequent" or "intermittent."

The ground of the exception relating to "conflicting ideas" is not sufficiently briefed to warrant consideration.

The court, referring to what the plaintiff did in the remodeling and furnishing the apartment house in 1939 and 1940, charged the jury that because the defendant paid her during all of that time, "what she did then is only material as bearing on what she has been able to do since May 5, 1942, the date when the defendant refused to make any further payments." The exception to this portion of the charge was on the ground that the jury was entitled to regard what the plaintiff did in 1939 and 1940 as the selection and inauguration by her of her occupation of managing an apartment house.

This instruction was, if anything, favorable to the defendant as the physical or mental condition of the plaintiff during 1939 and 1940 was not in issue. The evidence as to what the plaintiff did during this latter period of time in respect to the apartment house may have tended to show, as the defendant claims, that the plaintiff had then entered upon a gainful occupation but it had no tendency to show that she was able to follow that occupation from May 5, 1942, the time here material.

The defendant requested the court to charge that, "The expression 'gainful occupation' does not necessarily mean an occupation in which the gain is pecuniary or in terms of money; for example, a housewife who receives no money for her work is following a gainful occupation within the meaning of that expression." To the refusal of this request an exception was taken on the

ground that it was important to separate the idea of gain from mere money within the meaning of the expression "gainful occupation" as used in the policy, and also because the suggested illustration was apt for that purpose.

 That the management of an apartment house is an occupation which is potentially productive of financial gain is not and could not be questioned. It was the only occupation here involved. The court charged fully and clearly on the test or tests of a "gainful occupation" as applied to the facts here presented. It was not required to go beyond that and instruct the jury on an issue not presented by the evidence or give an illustration not at all pertinent in the case. *Bailey* v. *C. V. Rwy.*, 113 Vt 433, 438, 35 A2d 365.

After stating in the charge that the mere fact the plaintiff owns an apartment house does not bar her recovery, and that she had a right to invest her money and to look after her investment the court charged as follows:

> "The question for you to answer is whether she does the things which the evidence discloses she does as a 'gainful occupation.' Is she gainfully employed? In other words, does the income which she receives, or at least some reasonably substantial portion of it, come to her in return for work which she performs, or are the things which she does merely incidental to her ownership of the apartment building and does her income come to her from the return of her investment?"

The defendant excepted to putting to the jury the questions of whether the plaintiff is gainfully employed and whether her income comes to her as the result of work or as a return on her investment on the ground that this was drawing an unwarranted and too narrow a distinction. An exception was taken to the submission at all of the question of whether the earnings of the plaintiff from the apartment building are a return on her investment on the ground that "it is the only occupation, on the uncontradicted evidence, that she has, and on the uncontradicted evidence it is her occupation."

The defendant in support of this exception argues that this instruction permitted the jury to find that the operation and management of an apartment house is not an "occupation." If the

whole charge on this subject were contained in the first two sentences of the above quotation there might well be force to this argument. But all of the quoted instruction must be read together and in connection with the rest of the charge. *Lancour* v. *Herald & Globe Ass'n.*, 111 Vt 371, 382, 17 A2d 253, 132 ALR 486. Previously in the charge total disability is defined as disability to perform "the substantial and material acts connected with her present occupation." Thus it is seen that the court recognized that the management of an apartment house is an "occupation."

The statements in the charge made just prior to the portion excepted to read in connection with this latter portion, and as a whole, clearly show the instructions to the jury on this point. The court told the jury in effect that the mere fact that the insured has an investment from which she receives a financial return does not bar her from recovery. That in order to be barred it must be found that the plaintiff's income from rentals, or some substantial portion of it, comes as a result of work which she performs in the management of the house. That, on the other hand, if the acts of the plaintiff in connection with the house are only those which are incidental to ownership, so that her income is derived from ownership and not from labor then the plaintiff is entitled to re- .over.

It is universally held that the fact that an insured receives income from his investments does not deprive him of his right of recovery under a total disability provision such as the one here in question. *Erreca* v. *Western Life Ins. Co., supra; Pacific Mutual Life Ins. Co.* v. *McCrary,* 161 Tenn 389, 32 SW2d 1052; *Bubany* v. *N. Y. Life Ins. Co.,* 39 N. M. 560, 51 P2d 864; *Boughton* v. *Mutual Life Ins. Co.,* 183 La 908, 165 S 140; *Lorentz* v. *Aetna Life Ins. Co.,* 197 Minn 205, 266 NW 699. The fact that an insured may be able to do some acts or perform some duties in connection with the management of his investment does not bar him from a recovery if he is disabled from following that occupation under the tests set forth in the Clarke case, *supra.* See the cases just above cited, especially *Bubany* v. *Ins. Co.* and *Lorentz* v. *Ins. Co.*

The instruction in question was favorable to the defendant as it enabled the jury to find against the plaintiff if they decided that she received a substantial part of her income from the house

from duties which she performed, regardless of whether because of the plaintiff's physical disability, these duties were merely trivial or occasional or formed only a part of the substantial acts connected with the occupation of managing an apartment house.

No error has been made to appear in respect to the charge of the court to the jury.

The defendant made a motion to set aside the verdict which was denied. The first ground of the motion was to the effect that there was no evidence in the case to support a finding of total disability. This ground raises a question of law and is the same in nature and substance as a motion for a directed verdict. *Belock* v. *State Mutual Fire Ins. Co.,* 106 Vt 435, 438, 439, 175 A 19. Our holdings on the motion for a directed verdict dispose of this ground of the present motion.

The second ground of the motion was that the verdict is against the weight of the evidence and contrary to the evidence. This ground is addressed to the discretion of the trial court. Belock case at p. 439. In order for us to upset a verdict it must appear from the record that the evidence so preponderates against the verdict as to leave no reasonable basis upon which it can stand. Belock case at p. 443. From our review of the evidence and our holdings in respect thereto it is apparent that the evidence here affords a reasonable basis for the verdict rendered.

The third ground of the motion is based on a claimed misunderstanding of the charge by the jury. This claim is predicated on the fact that the court in stating the contract provisions relating to total disability included the one which stated that total disability shall, during its continuance, be presumed to be permanent if "such disability has existed continuously for ninety days." The defendant says that inasmuch as it had made payments for total disability for about ten years the jury must have understood that this presumption established the permanency of the total disability. The defendant also says that certain argument to the jury by counsel for the plaintiff tended to produce this misunderstanding on the part of the jury.

A reading of the whole charge shows that there is no merit to this ground of the motion. The statement in question was merely one of several taken from the policy contract. No exception was taken to it. The court then proceeded to define "total disability" in

various ways and charged that the question for the jury to decide was whether on the evidence the plaintiff has been totally disabled from June 5, 1942, to the time suit was brought. It would be unreasonable to hold that the jury must or might have gone astray for the reason claimed by the defendant in view of the charge, taken as a whole, which clearly defines the issue and accurately sets forth the tests in law, as applied to the facts, for its determination.

At the hearing on the motion to set aside the verdict the court found that counsel for the plaintiff argued to the jury that payment of disability benefits was in effect an admission of the existence of total disability during the time such payments were made. It also found that counsel for the plaintiff pointed out in his argument that such payments were not evidence of the existence of disability during the period involved in the suit. These findings dispose of the claim of misunderstanding by the jury resulting from argument of counsel on this point.

The fourth ground of the motion was to the effect that in several material matters the jury was left at liberty to follow either a correct or erroneous instruction. We have disposed of most of these claims in our holdings on the exceptions to the charge. Those which are based on alleged defects in the charge not supported by exceptions taken to the charge cannot be raised by this motion. *Packard* v. *Quesnel,* 112 Vt 175, 179, 22 A2d 164; *Bowler* v. *Miorando,* 112 Vt 363, 365, 24 A2d 351. It should be added, however, that the charge is not open in any respect to the infirmity claimed for it by the defendant as it clearly, fully and fairly presented the case to the jury.

No error has been made to appear in regard to the ruling on the motion to set aside the verdict.

*Judgment affirmed.*