## State of Vermont v. Carroll H. Haskins

[139 A2d 827]

September Term, 1957.

Opinion Filed November 5, 1957.

Opinion on Motion for Reargument Filed March 5, 1958.

*Gannett & Oakes* for the defendant.

*Ernest W. Gibson, III*, State's Attorney, for the State.

**Adams, J.** This is a prosecution for operating an automobile on a public highway while under the influence of intoxicating liquor. It charges a violation of V. S. 47, §10,287. The case is here on exceptions of the respondent after trial by jury resulting in a verdict of guilty with judgment and sentence thereon.

The first exception briefed is to the denial of the respondent's motion for a directed verdict made at the close of the State's case and renewed at the close of all the evidence.

Viewed most favorably to the state, as it must be in considering this motion, *State v. Bromley*, 117 Vt 228, 229, 88 A2d 833, the evidence tended to show the following facts:— On Tuesday, October 9, 1956, shortly after 5 P.M., Clarence Miles saw a Ford auto parked on the road from Newfane to South Wardsboro about ¼ of a mile beyond a covered bridge. It was on a curve on an upgrade on the right hand side of the road. There was a man in the car. About ¼ of an hour later when Miles returned and was travelling in the opposite direction, the car was in the same place. Later when he passed the place again, the car was backed over on the other side of the road below where it was before and at an angle to the road with the rear in the ditch. The wheels were spinning and smoke was pouring from under the car. Miles went home and reported it.

Wilbur Herbert, First Constable of Newfane, received the report by telephone from Miles shortly after 7 P.M. about the car being off the highway. He went to the scene and found the Ford car with the motor running. It was dark and the

lights on the car were not on. A man was "hanging over the wheel" and lying in the front seat. Herbert shook him and he did not arouse but only grunted. Herbert took the keys out of the ignition as the man was in no condition to drive. A garage proprietor in Newfane, Raymond Kent, came at that time. The Ford car was on the left side of the road on the curve. It had apparently slipped back down the hill. Its rear wheels were in the ditch and the front wheels on the road. This was about 7:15. Kent knew the man who was in the front seat and identified him to Herbert as Mr. Haskins of Brattleboro. The motor was not running at that time and Kent turned on the parking lights as Herbert could not find the switch. Herbert by shaking the man was trying to determine if he was asleep or if something else was involved. He talked with Kent and made up his mind that something else was involved and it was a case for the state police. Kent left as there was nothing else he could do. Herbert left about quarter of eight and called the state police. Two troopers came to Herbert's house about 8:30 and procured the keys to the auto.

Mr. Sanderson was driving from Newfane to his home on the South Wardsboro road five or ten minutes after five. He saw a green Ford car on the curve on the right hand side of the road. There was a man in the front seat with his head down, sort of on his chest. Later, about 6:30 when Sanderson came from home to his father-in-law's at Newfane Village, the car was on the same side of the road and Sanderson nearly stopped. The man was still in it with his head bent down and his eyes shut. Sanderson had a little boy with him so decided to go on and not trouble the man. Later that night, when Sanderson returned home, the car was on the left side of the road. Its rear wheels were in the ditch and it was 25 or 30 feet below the place where he had seen it before. It was dark then and he saw nobody around the car or in it.

Two members of the state police, who were on patrol duty that evening, Cook and Patnode, received a call by radio from the Bellows Falls Office. It was received at 8:10. They arrived at Herbert's house in Newfane about 8:30, procured the keys to the auto and received information from Herbert

about the matter. They drove to the place, parked their auto so that its lights shone on the Ford car. It was partly off the left side of the road with it parking lights on. The respondent, Haskins, was lying on the front seat. When they opened the door, they could smell the odor of alcohol. Patnode spoke to Haskins and shook him. He groaned, muttered and finally straightened up and started sliding out of the car. Patnode told him that they were state police and that he was under arrest for intoxication. His wallet was on the floor where the gear shift comes out and money was scattered over the floor. The troopers asked him to pick up the money and he said "What money?" and then said "Leave it there." When he was out of the car and standing on his feet, he swayed and had a strong odor of alcohol. Cook picked up the money that was on the floor of the car and put it in an envelope. He later counted it and there was $2,317.00. The troopers told Haskins to come along to their car and he said that he wasn't going to. They took hold of him and he shook himself loose. He was very belligerent and they had to put the handcuffs on him. He was placed in the troopers' car and taken to the police station at Brattleboro.

After arriving there, the troopers attempted to locate a doctor for the purpose of having him examine the respondent. They had difficulty in locating one and finally reached Dr. Carey at the hospital so took the respondent there. This delayed them so Dr. Carey didn't see the respondent until ten o'clock. He told Dr. Carey that he had one big drink of whiskey at Newfane at 7 P.M. There was a strong odor of alcohol on his breath, he was pretty talkative and cocky. His eyes were bloodshot and had poor reaction to light. His walk was fair. He refused to have blood taken for an alcohol blood test. This was after the doctor had explained at some length what the test meant and that if the blood was found to be below .15% alcohol any charge against him would be dropped.

The doctor testified that in his opinion the respondent at the time he examined him was under the influence of alcohol. Both troopers testified that when they saw him at the scene in Newfane and when the doctor examined him, he was under the influence of liquor. In fact, one expressed it as intoxicated

when he saw him at Newfane. Both testified that he had improved by the time he was examined by the doctor.

The respondent testified. His testimony was that he stopped at the West Valley Inn in Newfane between 5 and 6 o'clock and had a double drink of whiskey and that he was there from one-half to three-quarters of an hour. He then drove towards South Wardsboro and stopped his car beside the road to make out a check and look at some papers. He then started up the grade and the motor stopped. The battery was down so he could not start the motor. He then backed the car down the grade in an attempt to get it off the road and head it down the grade so that he could start it without the battery. In doing so he backed it into the ditch so he sat there waiting for the battery to build up so he could start the car. He went to sleep and the next thing he knew the state police were waking him up.

The foregoing recapitulation of the evidence shows conclusively that there was evidence fairly and reasonably tending to show the respondent's guilt, or in other words that the jury on the evidence would have been justified in finding the respondent guilty beyond a reasonable doubt. *State* v. *Tatko*, 119 Vt 459, 466, 128 A2d 663, and cases cited. There was more than mere suspicion and conjecture as claimed by the respondent. The factual situation is different than in *State* v. *Sanford*, 118 Vt 242, 108 A2d 516, relied upon by the respondent. Here there was direct evidence, coming from the respondent himself in his statement to the doctor that he drank a big drink of whiskey at Newfane at 7 P.M. There was evidence that a short time later, he was seen attempting to operate his car at the place where he was found by the constable in no condition to operate the auto and with the motor running. When the state police arrived shortly after that he was under the influence of intoxicating liquor. In fact the respondent conceded in oral argument that there was no question but that he operated his car on the highway from where he had a drink to where he was found. The motion for a directed verdict was properly denied.

The next exception briefed is to the action of the

court in continuing to hold the trial into the evening over the objection of the respondent. While we agree that the court in some circumstances might conceivably abuse its discretion in that regard, such abuse is never presumed. *Mullett* v. *Milkey*, 113 Vt 42, 45, 29 A2d 806. The party alleging the abuse of judicial discretion has the burden of showing it. *Ricci* v. *Bove's Executor*, 116 Vt 335, 339, 75 A2d 682. For these reasons, it was particularly incumbent upon the respondent to so brief this exception as to make the abuse apparent. His brief does not in any way, by page or otherwise, refer us to where we may ascertain the time when the trial started, the evidence or any part of it closed, the objection made, the case submitted to the jury or the verdict returned. We are left to search the record and transcript for all the facts by which the ruling may be tested. This briefing does not comply with Supreme Court Rule 8 and does not merit attention. *Croteau* v. *Allbee*, 117 Vt 332, 335, 91 A2d 803.

The other exceptions are to the charge of the court. We discuss them as enumerated in the respondent's brief.

■ A. The court charged the jury, "Now the respondent has taken the stand and testified. The statute makes him a competent witness, at his request, in his own behalf. The credit to be given the respondent's testimony rests solely with you and you are to consider it in view of his interest in the result of the trial and give it the weight to which you think it is entitled." The respondent excepted to this as follows, "We also object to that portion of the charge wherein the court referred to the fact the respondent's testimony may be considered in the light of his interest in the result of the trial. It implies the respondent has the only interest in the result. The charge as given did not refer to any and all witnesses including the witnesses for the state." An examination of the entire charge shows that the court fully and correctly charged the jury on the credibility of the witnesses and the weight to be given to their testimony which included specifically their interest in the result of the trial. A charge is to be construed as a whole and not piecemeal. *Ferris* v. *Patch*, 119 Vt 274, 278, 126 A2 114; *State* v. *Demag*, 118 Vt 273, 278, 108 A2d 390.

Furthermore, this Court in *State* v. *Bean*, 119 Vt 184, 185-187, 122 A2d 744, approved the charge as given here. No cogent reason has been advanced under this exception why we should change the holding in that case.

B. The court charged the jury, "If you find that the party has made statements at some other time materially different from his testimony here; that is, if his statements made here in court are materially different from statements made outside, then you may consider them not only as tending to impeach him as a witness (I am referring to the respondent now), as affecting his credibility and the weight you will give his testimony, but also, he being a party-in-chief, you may consider them as evidence of the facts as they were then stated out of court. It is all a matter of fact for you as jurymen and women to decide upon, and you alone." The respondent excepted to this part of the charge on the ground that there were no such conflicting statements in the evidence or made at some time by the respondent materially different from those made in court. He briefs it upon the ground that, there being no such inconsistent statements, it was error for the court to charge upon an issue that was not in the case.

The troopers testified that when they were in their car with the respondent travelling from the place where they found and arrested him to the police station at Brattleboro there was a lot of two-way conversation and they asked the respondent where he had been drinking and he would not say; that he claimed he was not intoxicated; that he kept asking them to let him go and he would not do it again; that they were good fellows and that he knew he was wrong and if they would let him go he would not get himself into such a mess again. The respondent testified that he told the troopers on their way from Newfane he didn't think there was any reason for taking him in and that he was all right as far as he could see. He denied specifically that he asked them to let him off this time or words to that effect. He testified that he told them there was no reason for taking him down and that he asked them for a reason and that they would not talk to him. Again, he specifically denied that he said if they would let him off he would

never do it again. The doctor testified that the respondent told him that he had one big drink of whiskey at Newfane at 7 P.M. The respondent testified that he stopped at the West Valley Inn at Newfane between five and six and had a double drink of whiskey.

This foregoing testimony including the denials of the respondent is in conflict and inconsistent with the testimony of the troopers and the doctor as to what the respondent said to them. They cannot stand together and are logically incompatible and self contradictory. With this testimony in the case, the grounds of this exception are without foundation and untenable. The court properly charged the law on inconsistent statements of a party. *Bennett* v. *Robertson*, 107 Vt 202, 211-212, 177 A 625, 98 ALR 152.

We add that the respondent also testified that he had no fuss with the troopers; that they did not put the handcuffs on him; that he dropped his money on the ground and neither his bill-fold or the money was on the floor of the car. It also appeared in evidence that when the wife of the respondent went with the troopers that same night to get his car, the motor started without any trouble and she drove it out of the ditch without any difficulty.

C. The respondent's brief under this heading pertains to the same exception that is briefed under B. He says under this heading that the instruction was erroneous as a matter of law. We have seen that the testimony was such that the exception had no foundation. That disposes of the claim here made adversely to the respondent.

D. The respondent briefs under this heading an alleged exception to a part of the court's charge as to what the jury should or should not consider in regard to the respondent being under the influence of intoxicating liquor. He quotes that part of the charge to which he claims an exception was taken. He then says in his brief, "Exceptions were timely taken." He does not refer us to any page in the transcript where the exception may be found. We have, however, examined the transcript as to the exceptions taken to the charge and read all these taken by the respondent. There is

no exception to that part of the charge in which he here claims error. As there was no exception taken, the question is not before us. *Richardson* v. *Persons*, 116 Vt 413, 414, 77 A2d 842; *Loomis* v. *Abelson*. 101 Vt 459, 463, 144 A 378.

■ He refers us in his brief to two pages of the printed case. The two pages at the places to which he refers contain part of the respondent's motion to set aside the verdict. The grounds of the motion there set forth contain the claimed error in the charge upon which he relies under this heading in his brief. He cannot raise the question in this manner. Alleged defects in a charge, not supported by exception, cannot be raised by a motion to set aside a verdict. *Anair* v. *The Mutual Life Ins. Co. of N. Y.*, 114 Vt 217, 237, 42 A2d 423, 159 ALR 547, and cases cited.

■■ E. The respondent does not specify in his brief the exception to which this section of his brief applies and he does not tell us where in the record it may be found. From the transcript, it seems to apply to a general exception as follows, "To the charge as a whole on the ground that it amounts to directing a verdict for the prosecution in that each and every portion of the charge as given and the charge considered as a whole states only the legal grounds favorable to the state." Such an exception is too general to require consideration. A trial court is entitled to be informed of the fault found with its instructions so that it may have a fair opportunity to pass judgment upon it and if objection appears to be well founded, add to, or modify the charge. *State* v. *Noyes*, 111 Vt 178, 181, 13 A2d 187. A general exception to an entire charge is not available. *Luce* v. *Hassam*, 76 Vt 450, 454, 58 A 725; *Goodwin* v. *Perkins*, 39 Vt 598, 605-606.

■ Other exceptions taken are not briefed so they are waived. *Campbell* v. *Howard National Bank*, 118 Vt 182, 183, 103 A2d 96.

*Exceptions overruled. Judgment affirmed. Let execution be done.*

### On Motion For Reargument

■ **Adams, J.** The motion of the respondent is based upon three grounds. The first is that this Court overlooked

the respondent's "argument that the trial court acted arbitrarily in acting on the respondent's motion to adjourn the trial instead of exercising the discretion that it was called upon to use." The respondent's brief in the original case was based upon the ground that the trial court's action in continuing the trial at night over the respondent's objection was an abuse of discretion. We do not find any claim or argument made in the brief that the trial court acted arbitrarily instead of exercising the discretion that it was called upon to use. A rehearing is not granted for the purpose of affording the opportunity to present new questions. *Morrill* v. *Boardman*, 117 Vt 103, 110, 86 A2d 146.

The second ground of the motion is that this Court overlooked the respondent's "argument that the giving of an instruction re inconsistent statements is erroneous under any circumstances in the absence of an intentional falsity." The opinion shows and states that the exception in regard to inconsistent statements had no foundation. We did not overlook the claim that the respondent now makes. We felt that this claim was sufficiently covered when we said in the opinion and held that the trial court properly charged the law on inconsistent statements of a party. We did not deem it necessary to state that the brief of the respondent on the claim there made and which he now says we overlooked and the authorities cited thereto applied to the testimony of a general witness as distinguished from the inconsistent statements of a party. Nor did we deem it necessary to add that the exception of the respondent to the court's charge did not include the ground there briefed and about which he now complains.

The third ground of the motion is that this Court overlooked the respondent's "argument regarding medical or other evidence to justify a finding that the respondent was under the influence of intoxicating liquor at the time of his operation of the vehicle in question." In the brief accompanying his motion, the respondent calls our attention to his argument on pages 3-5 of his original brief and says that he believes we overlooked it. We gave it due and careful consideration as those pages cover the respondent's entire argument on the point. He said there and again reiterates that the action of the res-

pondent in operating his automobile and being under the influence of intoxicating liquor must coincide in point of time. He relies upon the same cases for his law as applied to the facts that he relied upon in his brief on the pages to which he now refers.

We reviewed the testimony in great detail in the opinion and stated that its recapitulation showed conclusively that the jury were justified in finding the respondent guilty and that there was more than suspicion and conjecture as claimed by the respondent. He closes his motion on this point by asking that we reconsider his argument "that the evidence of guilt here was insufficient to support a verdict of guilty since such evidence was merely speculative." He then cites *State* v. *Sanford*, 118 Vt 242, 244, 108 A2d 516, that he relied upon in his original brief. We distinguished that case in the opinion and in doing so mentioned the evidence in the instant case as showing that the respondent's actions in drinking, attempting to operate his automobile and being found at the scene under the influence of intoxicating liquor were sufficiently coincidental in point of time.

■ This ground of the motion consists largely of a restatement of the grounds already argued and considered rather than pointing out to the Court wherein it is claimed that it has misapprehended or overlooked some point which is the office of such a motion. *Nelson* v. *Travelers Ins. Co.*, 113 Vt 86, 103, 30 A2d 75; *Leblanc* v. *Deslandes*, 117 Vt 248, 255, 90 A2d 802; See *Colby's Executor* v. *Poor*, 115 Vt 147, 154, 55 A2d 605.

*Motion for reargument denied. Let full entry go down.*