## Ruth G. Dashnow v. Paul A. Myers

[155 A2d 859]

September Term, 1959

Present: **Holden, Shangraw, Barney and Smith, JJ. and Daley, Supr. J.**

Opinion Filed November 3, 1959.

*Arthur & Arthur* for the defendant.

*J. William O'Brien* for the plaintiff.

**Holden, J.** The jury returned a verdict for the defendant at the trial of this automobile negligence action. On motion of the plaintiff the trial court set the verdict aside as being against the weight of the evidence and ordered a new trial. This appeal challenges the propriety of that ruling.

The plaintiff, Ruth G. Dashnow, was injured while riding as a passenger in the front seat of an automobile operated by her husband. Seated at her right was Linda Trayah, a young girl of eleven. The accident occurred shortly after eleven o'clock, the night of December 21, 1957. The weather conditions were described as good and the highway clear although there was some moisture on the pavement. The Dashnow vehicle turned from West Spring Street into North Street in the city of Winooski and proceeded north toward St. Peter Street. The distance between the West Spring Street intersection and the St. Peter Street crossing on North Street is approximately 150 yards. St. Peter Street intersects North Street at right angles and these intersecting highways are level and straight for some distance from the junction. At the intersection, North Street is 29 feet wide and St. Peter Street is 28.7 feet in width.

The defendant was operating a Pontiac two-door sedan, travelling east on St. Peter Street, approaching the North Street intersection from the west. A stop sign was located 18 feet west of North Street on the south side of St. Peter Street to signal traffic approaching North Street from the west. A similar stop sign marked the crossing at the north side of St. Peter Street to signal traffic approaching North Street from the east. The approaches to the intersection are obscured by buildings located on each of its corners.

The front of the Dashnow vehicle collided with the de-

fendant's Pontiac at the door on the right side. The Dashnow car left skid marks from the cross walk south of St. Peter Street, extending north to a point of impact, a distance of fifteen feet. From the point of collision, skid marks were traceable to the rear wheels of the Dashnow car, and indicated that the rear of that vehicle swung in a clockwise direction in an arc of 180°. The Dashnow car came to rest on North Street, at the northeast segment of the intersection with the front of the vehicle headed south, in a direction opposite from that in which it entered the crossing.

The vehicle operated by the defendant left no visible skid marks. It came to rest on St. Peter Street alongside a utility pole at the northeast corner of the intersection. There were no eye witnesses to the accident other than the occupants of the cars involved.

The plaintiff testified that she had never operated a motor vehicle prior to the accident. At the time her husband approached the intersection she was not paying much attention. She recalled that she observed rays from the headlights of a car on St. Peter Street that extended across North Street. She remembered the speed of her husband's car was reduced as they moved toward the intersection. She recalled the crash and the swirling of their car after the collision. The plaintiff was thrown from the front seat by the impact. She was extricated from beneath the Dashnow car after the accident. She testified that she made no outcry before the crash, explaining, "I didn't have time to say anything."

The plaintiff's husband testified that he was familiar with the intersection. He knew there were stop signs to halt traffic entering North Street from St. Peter Street. He observed the lights from the defendant's car as it moved from the left toward North Street. Dashnow was then seventy-five or eighty feet from the intersection. He reduced his speed. The witness testified that he didn't see the Myers vehicle itself until the defendant was twenty-five or thirty feet from the west cross walk on St. Peter Street. The Dashnow vehicle had then nearly reached the cross walk on North Street. He remembered "hitting my brakes and then the impact—." He felt the car go into a swinging motion. He estimated his speed

at the time he reached the intersection at twenty to twenty-five miles an hour.

Police officer Sprano investigated the accident and assisted in the removal of the persons injured. He testified to physical facts including a description of the location and several measurements taken at the scene. He found the defendant unconscious, lying partly on the pavement with his feet inside his car. He detected the odor of alcohol on the defendant's breath.

The defendant testified that he had come from a Christmas party at his place of employment in Essex. He admitted having had two drinks of whiskey between the hours of seven-thirty and the time of collision. He explained he had one drink before dinner and the second after finishing his meal. The defendant and companion, Jerry Charland, were returning to the place of the party after having taken two guests to their homes.

His testimony continued: "At North Street corner, I stopped and looked both ways automatically and Jerry, who was riding with me, he automatically looks and says, 'O. K. this way', because it is a blind corner and, you know, a person riding with you will automatically look. So we proceeded and started out into the middle of the street and that is all I remember. Didn't see any object coming at all. Didn't see no headlights, nothing at all. That's all I remember until I woke up in the hospital about thirty-five days later.

"Q. Now, were you unconscious all that time, were you?

A. Complete coma for about twenty days and semi-coma for fifteen.

Q. And after the thirty-five day period you made out a motor vehicle accident report?

A. Not immediately, sir, because I was still in the hospital. I didn't even remember where I lived until just two weeks before I came out of the hospital. Couldn't remember the location of my home or anything. I didn't say anything to my wife about this when I didn't remember. I couldn't remember how many children I had or anything."

Later, on direct examination, the defendant was permitted to read from his motor vehicle accident report, without objec-

tion. In the report it was stated that the defendant stopped for the stop sign, looked both ways on North Street and, seeing no one approaching from either direction, proceeded across North Street. When half-way through the intersection he was struck on his right side by the Dashnow vehicle. The defendant gave his speed at the time of impact at five to seven miles an hour.

At the conclusion of all the evidence both parties moved for directed verdicts. Their respective motions were denied. Following the return of the verdict in favor of the defendant, the plaintiff filed a motion that the verdict be set aside on numerous grounds. The grounds stated included the contention that the verdict was not supported by the evidence, and the claim that the verdict was against the weight of the evidence. The first aspect of the plaintiff's motion was overruled. The trial court acted favorably on the second ground.

In appealing from this action, the defendant maintains there is an inconsistency in the ruling of the trial court that denied the plaintiff's motion for verdict and the ruling that set the defendant's verdict aside as against the weight of the evidence. Such is not the case.

The plaintiff's motion for verdict is akin to that part of his motion to set the verdict aside on the ground it was not supported by the evidence. *Knight* v. *Willey*, 120 Vt 256, 259, 138 A2d 596. The court's discretion was not invoked; only a question of law was raised. *Laferriere* v. *Saliba*, 119 Vt 25, 30, 117 A2d 380; *Gould* v. *Gould*, 110 Vt 324, 331, 6 A2d 24; *Belock* v. *State Mutual Fire Insurance Co.*, 106 Vt 435, 439, 175 A 19. In denying these particular motions of the plaintiff, the court ruled as a matter of law that the evidence, viewed in the light most favorable to the defendant tended to support a defendant's verdict. *Dessereau* v. *Walker*, 105 Vt 99, 101, 163 A 632; *Paska* v. *Saunders*, 103 Vt 204, 216, 153 A 451. In this instance the court below was concerned only with the tendency of the evidence, not with its weight. *Shields* v. *Vermont Mutual Fire Insurance Co.*, 102 Vt 224, 255, 147 A 352.

The attack on the verdict on the ground that it was against the weight of the evidence stands differently. See

*Russell* v. *Pilger,* 113 Vt 537, 555, 37 A2d 403; *Collins* v. *Fogg,* 110 Vt 465, 470, 8 A2d 684. The motion thus laid appealed to the discretion of the trial court. *Anair* v. *Mutual Life Insurance Co.,* 114 Vt 217, 236, 42 A2d 423, 159 ALR 547; *Belock* v. *State Mutual Fire Insurance Co., supra,* 106 Vt 435, 439, 175 A 19. The discretionary action that followed which resulted in setting aside the jury's verdict is not revisable unless an abuse of discretion is manifest. *Cram* v. *Meagher,* 113 Vt 463, 464, 466, 35 A2d 855.

"We will not disturb a ruling by which a verdict has been set aside, as contrary to the weight of the evidence, merely because the evidence preponderates in its favor; to justify our interference it must appear that the evidence is so strongly in its favor as to leave no reasonable basis for a contrary verdict. We are bound to indulge every reasonable presumption in favor of the ruling, bearing in mind that the trial court was in a better position to determine the question." Moulton, J. in the Belock case, *supra,* 106 Vt at 443, 175 A at 22.

■■ The question presented is not how we might regard the result reached by the trial court. To justify the appellate court in sustaining an exception to the discretionary ruling, it must appear from the record that there was no reasonable basis for the action taken. *Woodhouse* v. *Woodhouse,* 99 Vt 91, 153, 130 A 758. The burden of showing an abuse of judicial discretion rests on the party who claims it. *Ricci* v. *Bove's Executor,* 116 Vt 335, 339, 75 A2d 682; *Daniels* v. *Preston,* 102 Vt 337, 339, 148 A 285.

The defendant seeks to discharge this burden by reference to the testimony of the investigating police officer. During the cross examination of Officer Sprano the witness gave an opinion to the effect that the defendant had proceeded into the intersection a distance of fourteen or fifteen feet when the Dashnow car entered the junction. It is urged that this testimony considered in the light of the physical facts and the testimony of the defendant that his speed was five to seven miles an hour establish that the defendant had the right of way. He claims an abuse of discretion in overthrowing the defendant's verdict with such evidence in the record.

The record discloses the officer further testified on this point:

"Q. Give us what you mean by being fourteen or fifteen feet. You saying (sic) Mr. Dashnow was in the cross walk when the Myers car was fourteen or fifteen feet in the intersection?

A. No. That is impossible.

Q. Tell us who got to the intersection first, in your opinion on the facts you have in mind?

A. I would say both got to both cross walks about the same time."

In testing the weight of the evidence the trial court was entitled to consider the statutory safety rules applicable to the defendant's crossing of North Street at the time the accident occurred. The Dashnow automobile was approaching the intersection from the defendant's right. 23 V. S. A. §1033 provides that all vehicles shall give way to vehicles approaching from the right. Except for certain limitations not here material, the statute gives the vehicle approaching from the right priority over cars proceeding from the left. Since the statute is a safety rule, proof of its breach gives rise to a rebuttable presumption of lack of ordinary care on the part of the delinquent. *Kremer* v. *Fortin*, 119 Vt 1, 5, 117 A2d 245. In passing on the plaintiff's motion, the trial court was required to weigh the evidence to determine whether the defendant effectively met the presumption raised against him.

Undoubtedly the weight to be given to the testimony of the defendant was a matter of grave concern to the trial court. His recollection of the events leading up to the accident was given after a prolonged period of lapse of memory. His testimony to the effect that he looked in both directions and saw no vehicle approaching is hardly consistent with the fact that the two vehicles met in collision at a point on North Street where that highway extended straightaway from some distance to the north and south. There is evidence that the intersection was lighted and that the investigating officer requested the headlights of the Dashnow vehicle be turned off after the collision. From the evidence, it could be found that

the car in which the plaintiff was riding was within the range of the defendant's vision as he approached the intersection. In this situation it was within the province of the trial court to say that the defendant's testimony that he looked in both directions and did not see the car approaching from his right did not avail him. He was chargeable with sight of objects in plain view. *Senecal* v. *Bleau*, 108 Vt 486, 494, 189 A 139; *Steele* v. *Fuller*, 104 Vt 303, 309, 158 A 666.

The defendant maintains that he entered the intersection at a slower rate of speed than the car in which the plaintiff was riding. But this evidence does not help him. If the defendant had observation of the Dashnow car, his approach from the disfavored direction at a rate of speed less than the vehicle entering from his right is all the more reason that he should have yielded the right of way as the statute required. When two vehicles approach an intersection in point of time and at such distance and rate of speed that collision is to be reasonably apprehended, the vehicle entering from the disfavored direction must give way and await the passage of the vehicle favored by the statute. *Rich* v. *Hall*, 107 Vt 455, 462, 181 A 113.

Beyond this, traffic on North Street was protected by stop signs located at the approaches from St. Peter Street. 19 V. S. A. §41 provides that every vehicle immediately before entering the limits of a throughway, designated as a 'stop' intersection, shall be brought to a full stop and yield the right of way to all vehicles or pedestrians approaching from either direction, except when otherwise directed by a police officer or signal.

There was no direct evidence offered to establish that North Street had been officially designated as a statutory throughway under 19 V. S. A. §38. We are not called upon in this instance to say whether this deficiency in the proof relieved the defendant of the legal consequences of section 41 at the trial. It is enough to say that the evidence on this point was sufficient to appeal to the discretion of the trial court in passing on the motion to set aside the verdict as against the weight of the evidence. See *Legere* v. *Buinicky*, 93 NH 71, 35 A2d 508, 509; also 60 CJS, Motor Vehicles, §360, e, pp. 857-859.

The defendant refers us to the testimony of the plaintiff. The defendant contends that the verdict of the jury might well have turned on the plaintiff's contributory negligence. He argues that the inattention of the plaintiff as a passenger and her failure to cry out when she observed the lights from the defendant's car could well have had a detrimental effect on her husband's operation of his vehicle at the time of the accident.

■ The dictates of prudence might equally as well have required silence on the part of the guest passenger when confronted by this situation. In any event, the duty of a passenger to warn the operator arises only when he fully apprehends a danger, and the danger is such that it would call upon a reasonably prudent passenger to put the operator on guard and the risk would thereby be averted. *Kaufman* v. *Pennsylvania Railroad Co.*, 2 NJ 318, 66 A2d 527, 529. See also, *Higgins* v. *Metzger*, 101 Vt 285, 293, 143 A 394.

■■ The plaintiff was not bound to anticipate that either operator would omit the exercise of due care in entering this intersection. *Senecal* v. *Bleau*, 108 Vt 486, 495, 189 A 139; *Leclair* v. *Boudreau*, 101 Vt 270, 276, 143 A 401, 63 ALR 1427. And any negligence on the part of her husband could not be imputed to her on the facts of this case. *Blondin* v. *Carr*, 121 Vt 157, 160, 151 A2d 121. In this discretionary ruling, the trial court was entitled to conclude that the evidence did not support a determination by the jury that the plaintiff's conduct contributed as a cause of her injury.

■ The plaintiff's motion to set the verdict aside as against the weight of the evidence required the trial court to proceed with cautious deliberation. Once the issue of negligence has been committed to the jury under correct instructions, it is the province of the jury to resolve the true facts, and relate the conduct of the parties to the standard of care required of reasonably prudent men under similar circumstances. In this, the judgment of the jury as expressed in the verdict is, and should be in most instances, final. Where there is a conflict in the evidence, the trial court is not empowered to disturb the result of the jury merely because the

conclusion differs with that which the judge might have reached. Yet, in those occasional cases where it is clear the jury has gone astray, by influence of passion or prejudice, or because the jury has taken an obviously mistaken view of the merits of the controversy, it is the duty of the Court, upon proper motion, to reject the verdict. *Rule* v. *Johnson*, 104 Vt 486, 491, 162 A 383; *Smith* v. *Martin*, 93 Vt 111, 122, 106 A 666.

The circumstances of the accident, the oral testimony of the witnesses and the combined effect of all the evidence were matters for the trial court's considered discretion in passing on the motion presented. The record in its entirety fails to show the court's discretion was exercised on grounds or for reasons clearly untenable. Without such a showing, no abuse of discretion appears, and the order entered must stand. *Belock* v. *State Mutual Fire Insurance Co.*, *supra*, 106 Vt at 444, 175 A at 23; *Temple* v. *Atwood*, 99 Vt 434, 435, 134 A 591.

*Order setting aside the verdict and granting a new trial is affirmed, and cause remanded.*