WILLIAM MORRILL ET UX *v.* HERBERT M. BOARDMAN ET UX.

(86 A2d 146)

November Term, 1951.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed January 2, 1952.

Opinion on Motion for Reargument Filed February 7, 1952.

*Finn, Monti & Davis* for the plaintiffs.

*Henry F. Black, Frank R. Fucci* and *Everett L. Hathorn* for the defendants.

JEFFORDS, J. This is an action of tort based on alleged false and fraudulent representations leading up to the lease of the defendants' farm and personal property thereon to the plaintiffs. The case was tried by jury with a resulting verdict and judgment for the plaintiffs against both defendants and it is here on exceptions of both parties.

The plaintiffs in their complaint alleged five such representations but only the first two need here be considered as the jury in returning the special verdict submitted by the trial court found that the plaintiffs suffered no damage as the result of the last three claimed misrepresentations set forth in the complaint. The allegations here material are as follows: (a) "That fifteen (15) acres of meadowland on said farm would produce between three (3) and four (4) tons of hay to the acre." (b) "The said farm had been put into such a state of cultivation and then and there was in such a state of cultivation that the meadows thereof and thereon would produce a crop of hay sufficient to carry and feed twenty (20) head of milking cows and twenty (20) head of young cattle."

The defendants at the close of all the evidence moved for a di-

rected verdict. The grounds for the motion as here briefed may be summarized as follows: The plaintiffs had not made out a prima facie case of fraud as the evidence viewed in the light most favorable to them does not fairly and reasonably tend to show that the alleged representations were made by the defendants or were relied upon by the plaintiffs. The motion was denied.

The transcript is quite voluminous. From it the evidence taken in the light most favorable to the plaintiffs discloses the following material facts bearing on the above mentioned grounds: The plaintiffs came to live on the farm about the first of August, 1947. Previous to that time there had been talks between the parties relative to the lease or purchase of the farm. From that time until the date of the lease, September 16, 1947, these talks were continued and Boardman stated to Morrill the representations alleged to have been made by him. Mrs. Morrill was present when these representations were made and testified that they were made. Morrill testified that he believed these statements and relied upon them. The 15 acre piece of land at the time the representation as to its capacity was made was bog-harrowed and rough.

Previous to the time that the plaintiffs came to live with the defendants, Morrill had worked for a short time on farms in Connecticut and in this state. While on the farm in question he helped in haying and went all over the farm. He had taken an agricultural course for one year at the University of Connecticut, specializing in feeding and management of cattle. He had had no previous experience with bog-harrowed land and was not able to tell what the production of the land would be from anything he had observed there.

The lease was of three parcels of land having a total acreage of approximately 246 acres. It was for a two-year period with an option to purchase.

After the plaintiffs took over the farm and in the fall of 1947 Morrill seeded the so-called 15-acre tract and again seeded it in the spring of 1948. It produced two tons or less to the acre. Before it was seeded the land was bog-harrowed and before the spring planting it was plowed, harrowed and smoothed with a tractor which the plaintiffs had bought.

During most of the time that the plaintiffs were on the farm, Morrill went to an agricultural school. He asked the instructor for advice concerning the leased land and this advice was given him. The instructor testified that in his opinion the producing capabili-

ties of the fields had increased quite materially from the time Morrill went onto the farm until he left.

Morrill and the instructor measured the 15-acre parcel and found that it contained a little over 9 acres.

Morrill testified that the land as a whole did not produce enough hay to support 20 head of cattle and 20 head of young stock. His testimony was to the effect that during the time he was on the farm he never had at one time 40 head of cattle of both kinds and that during the winter of 1948 and 1949 he was obliged to purchase hay in the amount of approximately $1,000.00. During the summer of 1949 Morrill cut approximately 30 tons of hay on the farm and it would have taken approximately 78 tons for a complete winter feeding for 20 head of milking cows and 20 head of young stock.

The plaintiffs remained on the farm until January, 1950.

The defendants admit in their brief that the plaintiffs produced some evidence in support of their allegations but they say that all the evidence viewed in the light most favorable to the plaintiffs is not of such quality and character as to warrant the jury in reasonably returning a verdict for the plaintiffs. The defendants claim that as to the allegations in question the plaintiffs' own testimony shows that they did not rely upon, or were misled, or deceived by these alleged representations. In support of this claim the defendants refer to the testimony of Morrill that he knew the land contained in the so-called 15-acre parcel was bog-harrowed and rough and needed seeding and fertilizing; that he was not satisfied in his own mind in the fall of 1947 that these fields were in proper condition to be seeded, but that he nevertheless seeded them. Other testimony of a similar nature is referred to and also the statements of Morrill to the effect that from what he saw of Boardman and the condition of the farm he did not consider Boardman a good farmer or farm manager.

The evidence pointed out by the defendants was for consideration by the jury in determining the question of reliance. Some of it was modified by other testimony of Morrill. The testimony above referred to does not make impossible his testimony that he did rely on the representations in question. Thus his statement of reliance was for the jury to weigh and consider, *Potter* v. *Crawford*, 106 Vt 517, 520, 175 A 229, together with other evidence tending to show reliance in determining this question. See also *Downing* v. *Wimble*, 97 Vt 390, 393, 123 A 433.

The defendants refer to certain other evidence which they say shows such a contradiction to the plaintiffs' claim that they have been defrauded that their favorable evidence does not fairly and reasonably tend to show that the alleged representations were made or relied upon. This evidence consists largely of testimony from the plaintiffs that in the fall of 1949 the parties met at a bank in Barre in an attempt to make financial arrangements for the plaintiffs to exercise their option to buy the farm. The defendants refer to a statement by Morrill to the effect that he would have agreed to practically any terms to buy the farm. They cite the fact of the holding over beyond the expiration of the lease. They stress a sentence in a letter, defts'. ex. E, of July 18, 1949, from Morrill to Boardman which is as follows : "String along with whatever can be gotten from F H A and the bank and I'll do my best to see that you get every dollar that we contracted for."

The defendants' position seems to be that this evidence shows so conclusively that the plaintiffs were satisfied with the farm that it cannot be said that they were defrauded in the sense that no damage had been suffered by the plaintiffs. It could have no tendency to show, as claimed by the defendants, that the evidence favorable to the plaintiffs does not tend to show that the alleged representations were made or relied upon. But aside from this fallacy in the argument of the defendants as to the force of this evidence, it is apparent from a reading of the transcript as a whole and especially defts.' ex. E that the jury might well have found that the plaintiffs' effort to buy the farm was not because they were satisfied with it but because they hoped eventually to come out all right after a bad bargain. Thus in the letter referred to and before the above quoted sentence, Morrill tells Boardman that he is thinking seriously of leaving the farm and shows that he is dissatisfied with the situation and warns Boardman what would happen if he left. Then follow two sentences which we quote. "So your best bet is still for me to stay here, sucker that I am, for more than one person has told me that I would be better off to take a loss now and not waste any more years of my life here. Luckily I still think there is a chance of making a success here if given half a chance and I'm willing to try it."

Our conclusion is that there was evidence in the case of such quality and character as to justify the jury, acting reasonably, to return the verdict they did and that the rule as to countervailing

evidence stated in *Wellman, Admr.* v. *Wales,* 98 Vt 437, at 448, 129 A 317, relied upon by the defendants, does not here apply.

■■ The defendants also urge in support of their motion the claim that the alleged representations were not of existing facts but merely opinions as to future results. As this claim was not made below as a ground of the motion we will not consider it. *Seaver* v. *Lang,* 92 Vt 501, 510, 104 A 877; *Preston* v. *Montgomery Ward,* 112 Vt 295, 298, 23 A2d 534. The defendants did make this claim a ground for their motion that the trial court withdraw from the consideration of the jury the allegations in question but nothing is briefed in respect to this motion and consequently any claim of error in respect to it is waived. *Little* v. *Loud,* 112 Vt 299, 301, 23 A2d 628.

No error has been made to appear in the denial of the defendants' motion for a directed verdict.

In support of their claim of error in the refusal of the trial court to set aside the verdict the defendants rely entirely on their argument and cases cited in support of their claim that a verdict should have been directed in their favor. Consequently our holding on that matter applies to and is the same on this point.

The defendants' third exception here briefed is to the granting of the plaintiffs' motion for a certified execution against the defendant Boardman. The record shows that on September 7, 1950, judgment was entered on the verdict against the defendants. At that time no request was made for a certified execution but in the evening of that day a written motion for such an execution was filed with the clerk of the trial court.

A hearing was had on that motion on October 2, 1950. The defendants objected to the granting of the motion. One ground of the objection was, in substance, that as a matter of law it was now too late under V. S. 47, § 2246, to grant this motion. The motion was granted as to defendant Boardman, the court finding that the cause of action arose from his wilful and malicious act and that he should be confined in close jail. The motion was denied as to Mrs. Boardman. Exceptions were allowed both parties to these rulings.

V. S. 47, § 2246 reads as follows: "A person shall not be admitted to the liberties of the jail yard, who is committed on execution upon a judgment rendered in an action founded on a tort, when the court, at the time of such judgment, adjudges that the cause of action arose from the wilful and malicious act or neglect of the de-

fendant, and that the defendant ought to be confined in close jail, and a certificate thereof is stated in or upon such execution."

■ In order for a plaintiff to take advantage of this statute the certificate therein referred to must state that *"at the time of rendering such judgment it was adjudged by the court that the cause of action,* etc." *In re Wheelock,* 13 Vt 375, 377. In that case there was nothing in the certificate to show "that any such adjudication of the court was made at the time of rendering judgment." It was held that the certificate in that case was erroneously and improperly granted and that it be vacated.

In the present case it is shown both from the record and from the defendants' amended bill of exceptions that at the time of rendering judgment on the verdict the trial court did not adjudge that the cause of action arose from the wilful and malicious act or neglect of the defendants or either of them and that they or either of them ought to be confined in close jail. It follows both from the holding in the Wheelock case, supra, and from the wording of the statute that the trial court erroneously granted the motion for a certified execution as to the defendant Boardman and that there was no error on its part in denying the motion as to the other defendant.

The plaintiffs excepted to the refusal of the court to grant a certified execution against both defendants and have briefed and argued this question. The holding just above made makes it unnecessary to discuss the various questions and points contained in the plaintiffs' brief.

*It follows from what we have said that the plaintiffs' exceptions are dismissed; that the defendants' exceptions to the granting of a certified execution as to the defendant Herbert M. Boardman are sustained and the order for such execution is vacated; that the judgment on the verdict is affirmed. Neither party to recover costs in this Court.*

### On Motion for Reargument.

■ Jeffords, J. The defendants in their brief in support of their motion for reargument say that we failed to consider certain facts and questions raised in the case relating to their motion for a directed verdict. In support of this claim they refer us to certain evidence. This evidence was not referred to in their original brief as required by our rule 8, par. 5 and by our own decisions. *Ryan* v.

*Orient Ins. Co.,* 96 Vt 291, 306, 119 A 423.   Moreover, it was all evidence in their favor not to be considered in passing on the motion.

The defendants also attempt to claim that the representations in question were not of existing facts but merely opinions as to future results.   As shown in the opinion this matter was not briefed and thus was waived.   A rehearing is not granted for the purpose of affording opportunity to present new questions.   *Ryan v. Orient Ins. Co., supra,* at page 305.

*Motion for reargument denied.   Let full entry go down.*