## Samuel Kremer v. Robert Fortin

[117 A2d 245]

May Term, 1955.

**Present: Jeffords, C. J., Cleary and Chase, JJ., and Holden and Shangraw, Supr. JJ.**

Opinion Filed October 4, 1955.

*A. Pearley Feen, Philip W. Hunt* and *Paul D. Sheehey* for the plaintiff.

*Edmunds, Austin & Wick* for the defendant.

**Jeffords, C. J.**   This is an action of tort arising out of an automobile accident.   The case is here on exceptions of the plaintiff to the granting of the defendant's motion for a directed verdict and to the judgment for the defendant.   The motion was granted both on the ground of no negligence as a matter of law on the part of the defendant and of contributory negligence on the part of the plaintiff.

The evidence viewed in the light most favorable to the plaintiff, as it must be in determining whether error was committed, tended to prove the following material facts:   The accident occurred on January 27, 1953 at about 6:30 P.M. in the intersection of St. Paul and Cherry Streets in the city of Burlington.   The plaintiff's car was traveling south on St. Paul and a fire truck, driven by the defendant, was traveling west on Cherry.

As the plaintiff started south on St. Paul after turning off Pearl Street he was traveling at fifteen to twenty miles an hour.   It was dark and the road was dry.   As the plaintiff was going down St. Paul he was following another car by from twelve to fifteen feet.

Before reaching the cross walk at the intersection of the two streets the plaintiff looked to his right and to his left as far as he could see.   At the northeast corner of the intersection there was a service station which was set back from the northerly line of Cherry Street just a few feet and it obstructed the view to the left on that street.   The plaintiff looked to his left when he was about ten or twelve feet from the cross walk and at that time saw no lights coming toward him on Cherry Street.

As the plaintiff was coming toward the cross walk he slowed to ten or twelve miles an hour and when the front end of his car was at the cross walk he looked to his left again and, for the first time, saw the fire truck and at the same time heard a fire siren.   The truck was then a short distance away, about seventy-five feet.

When the plaintiff saw the truck he did not think that he could pull to the side and stop without blocking the intersection. He attempted to increase his speed a bit, to the extent that he could in view of the car ahead. As the plaintiff crossed the intersection the truck appeared to veer to the left to a slight extent and struck the plaintiff's car when the front of the car was past the center of the intersection. The right front of the truck struck the left side of the car at about where the driver sits. The truck pushed the car over the curb at the southwest corner of the intersection and through two cement posts holding a street sign and a mail box. The truck pushed the car this distance before the defendant could stop the truck. The point of impact was a few feet to the north of a manhole cover which was in the center of the intersection. There were skid marks in the road from the point of impact to the rear of the truck.

Before reaching the intersection the defendant had driven through the Church Street intersection and then picked up speed. He testified that he was traveling around twenty-five miles an hour and that at that speed he thought he could stop in twenty-five feet.

As the defendant approached the St. Paul Street intersection he started to slow up by letting up on the accelerator a little. He did not apply the brakes. When he saw the car the defendant was between twenty-five and thirty feet from the intersection and he did not think the plaintiff was going to stop but he did not start to apply his brakes until he was at the cross walk. Before hitting the car the defendant turned to his left.

The siren on the truck was sounded for the Church Street intersection, then it stopped and started up again when the truck came toward St. Paul Street. The truck must have been pretty nearly at the corner of St. Paul and Cherry Streets when the siren was sounded a second time. No bell was being rung.

We will first consider the question of contributory negligence. V. S. 47, §10,219 subdivision II as amended by No. 242 of the Acts of 1949 reads as follows: "Right of way. Except as hereinafter provided, all vehicles shall give the right of way

to other vehicles approaching at intersecting highways from the right; and shall have right of way over those approaching from the left; provided that upon the approach of an ambulance, police, or fire department vehicle which is sounding a siren or displaying a red light, or both, all other vehicles shall pull to the right of the lane of traffic and come to a complete stop until such emergency vehicle has passed; and provided further, that wherever traffic officers are stationed, they shall have full power to regulate traffic irrespective of the foregoing provisions."

At the time of the accident the fire truck was responding to a still alarm. The evidence is undisputed that as it proceeded to the fire its siren was being sounded and that it could be heard for a great distance; for two miles when atmospheric conditions were right.

Witness Lines, who was driving his car from a place on Pearl Street along that street and then from its intersection with St. Paul Street along the latter, first heard the siren as he turned from Pearl into St. Paul. At the time he made the turn the plaintiff's car was about the middle of the city block to Cherry Street ahead of him. The plaintiff's car did not stop.

Witness Edyth Bushnell who occupied an apartment in a building on the southwest corner of St. Paul and Cherry Streets testified that she was looking out of a window at the time of the accident. She saw the plaintiff's car as it traveled down St. Paul all the way from Pearl Street. She noticed this car in particular as it kept on coming, whereas other cars on St. Paul and even on Pearl drew up to the side "when they heard the engines coming, not knowing just what direction they were coming from." She could clearly hear the siren even though the windows in the room were closed. She first heard the siren when it sounded for the intersection of Church and Cherry Streets. On cross examination she testified in substance as set forth in the last paragraph of the statement of facts most favorable to the plaintiff above set forth.

To impose upon the driver of a vehicle the duty of pulling to the right of the lane of traffic and coming to a complete stop until an emergency vehicle which is sounding its

siren has passed, notice to him must be given of its approach so that he has a reasonable opportunity to comply with the statutory requirements in this respect. *Balthasar* v. *Pacific Electric Ry. Co.*, 187 Cal 302, 202 P 37, 19 ALR 442, 458; *Baltimore Transit Co.* v. *Young*, Md, 56 A2d 140.

In the present case it was shown that the siren was heard plainly by other automobile drivers in the vicinity of the place of accident and by the witness Bushnell. Undoubtedly the plaintiff, by the exercise of ordinary care and caution, could easily have heard the siren in sufficient time to comply with the statutory requirements. See *Baltimore Transit Co.* v. *Young, supra,* a case much in point with the instant case.

■ The plaintiff testified that the first time he heard the siren was when the front of his car was at the cross walk of the intersection and that the fire truck was then a short distance away. He will be presumed to have seen whatever was in the range of his vision, if he looked, and to have heard whatever he might hear, if he listened. *Harrington* v. *Rutland R. R. Co.,* 89 Vt 112, 120, 94 A 431. The evidence showing that other people in the vicinity plainly heard the siren proves conclusively that the plaintiff did not exercise his sense of hearing with reasonable diligence.

■ It is not necessary that the siren be sounded continuously to give the required notice of the approach of an emergence vehicle. *Baltimore Transit Co.* v. *Young, supra.*

■ The statute in question is a safety statute. We have held several times that the breach of such a statute makes a prima facie case of negligence and gives rise to a rebuttable presumption of the lack of ordinary care on the part of the delinquent. *Shea* v. *Pilette,* 108 Vt 446, 450, 189 A 154, 109 ALR 933. There may be, however, circumstances under which the breach of a statutory duty will be determinative of the existence of negligence. Same case at page 451.

■ We will assume, without so deciding, that the breach of this statute gives rise only to a rebuttable presumption of negligence. To bar recovery the plaintiff's violation of the statute must have been a proximate cause of the accident. Same case at page 453. Since there is no reasonable evidence

in the case tending to rebut the presumption and since the violation of the statutory requirements was a proximate cause of the accident, it follows, that because of the violation, the plaintiff was guilty of contributory negligence as a matter of law.

The plaintiff relies on *Stone* v. *Wood*, 104 Vt 105, 157 A 829, and *Reid* v. *Abbiatti*, 113 Vt 233, 32 A2d 133. Neither of these cases is of any help to him. In the former it was held that the ordinance in question had no application to the defendant as there was no fire apparatus approaching in the street that he was traveling and that it only applied to the defendant after he entered the intersection when it was then too late to make compliance with the ordinance effective and his non-compliance did not proximately contribute to the collision. The plaintiff claims that the statute here has no application to the facts in the case as he was in the intersection when the siren was sounded. This claim ignores the evidence that the siren was sounded previous to the time when the plaintiff first heard it and that it was then heard by others, as previously set forth.

As to the case of *Reid* v. *Abbiatti*, it is sufficient to say that the statute here under consideration was not there in issue and the facts bearing on the question of contributory negligence were entirely different from the ones here on that question.

In the case of *Russell* v. *Nadeau*, 139 Me 286, 29 A2d 916, also relied upon by the plaintiff, there was conflicting evidence which would warrant the jury in finding that no sirens or other alarms were being sounded. That is not the situation here.

Moreover, the plaintiff was negligent in attempting to pass through the intersection ahead of the fire truck. He saw it when the front of his car was at the cross walk and the truck was then a short distance away, about seventy-five feet. The cross walk was twelve feet wide and Cherry Street was a little over forty feet wide. The evidence is undisputed that the truck was traveling about in the center of Cherry Street. As the plaintiff approached the cross walk the speed of his car was from ten to twelve miles an hour. The evidence was undisputed that a car going twelve miles per hour can be

stopped in about fifteen feet and at ten miles per hour in a shorter distance. As the front of the plaintiff's car was past the center of the intersection when the collision occurred it is apparent that the car had traveled at least thirty-two feet from the time the plaintiff saw the truck to the time of the collision. It is also apparent that if he had applied his brakes when he first saw the truck, as a prudent person in like circumstances would have done, there would have been no collision. Instead of doing this he took the chance that he could get through the intersection ahead of the fire truck, and lost.

The plaintiff claims that it was his judgment that if he tried to stop, his car would be in the intersection and that he was confronted with a sudden emergency. He cites *Frenier* v. *Brown*, 116 Vt 538, 543, 80 A2d 524, in support of this claim. The facts in the two cases are not at all similar. In the present case if the plaintiff had brought his car to a stop in the intersection no injury to person or damage to property would have resulted, as has been shown. The reason given for not stopping is not a valid one.

The sudden emergency rule cannot be invoked by a party except when he is confronted with a sudden danger through no fault of his own. But one placed in sudden danger is held responsible for poor judgment if his own negligence contributes to cause the emergency. *Rich* v. *Hall*, 107 Vt 455, 461, 181 A 113, and cases cited. In the present case the sudden emergency, if it could properly be so-called, was, as we have seen, brought about by the negligence of the plaintiff in failing to obey the statutory requirements and thus it is of no help to him.

Our holding on contributory negligence makes it unnecessary to consider the question of negligence on the part of the defendant. *Judgment affirmed.*