**Samuel SIMBLEST, Plaintiff-Appellant,**

v.

**Joseph MAYNARD, Defendant-Appellee.**

**No. 661, Docket 34285.**

United States Court of Appeals,
Second Circuit.

Argued April 1, 1970.

Decided May 12, 1970.

Robert Grussing, III, Brattleboro, Vt., for plaintiff-appellant.

Robert H. Erdmann, Burlington, Vt. (Wick, Dinse & Allen, Burlington, Vt., on the brief), for defendant-appellee.

Before KAUFMAN and FEINBERG, Circuit Judges, and TIMBERS, District Judge.*

TIMBERS, District Judge:

We have before us another instance of Vermont justice—this time at the hands of a federal trial judge who, correctly applying the law, set aside a $17,125 plaintiff's verdict and entered judgment n. o. v. for defendant, Rule 50(b), Fed.R. Civ.P., in a diversity negligence action arising out of an intersection collision between a passenger vehicle driven by plaintiff and a fire engine driven by defendant in Burlington, Vermont, during the electric power blackout which left most of New England in darkness on the night of November 9, 1965. We affirm.

I.

Plaintiff, a citizen and resident of New Hampshire, was 66 years of age at the time of the accident. He was a distributor of reference books and had been in Burlington on business for three days prior to the accident. He was an experienced driver, having driven an average of some 54,000 miles per year since 1922. He was thoroughly familiar with the intersection in question. His eyesight was excellent and his hearing was very good.

Defendant, a citizen of Vermont, had resided in Burlington for 44 years. He had been a full time fireman with the Burlington Fire Department for 17 years. He was assigned to and regularly drove the 500 gallon pumper which he was driving at the time of the accident. He was thoroughly familiar with the intersection in question.

The accident occurred at the intersection of Main Street (U.S. Route 2), which runs generally east and west, and South Willard Street (U.S. Routes 2 and 7), which runs generally north and south. The neighorhood is partly business, partly residential. At approximately the center of the intersection there was an overhead electrical traffic control signal designed to exhibit the usual red and green lights.

At the time of the accident, approximately 5:27 P.M., it was dark, traffic was light and the weather was clear. Plaintiff was driving his 1964 Chrysler station wagon in a westerly direction on Main Street, approaching the intersection. Defendant was driving the fire engine, in response to a fire alarm, in a southerly direction on South Willard Street, also approaching the intersection.

Plaintiff testified that the traffic light was green in his favor as he approached and entered the intersection; but that when he had driven part way through the intersection the power failure extinguished all lights within his range of view, including the traffic

light. All other witnesses, for both plaintiff and defendant, testified that the power failure occurred at least 10 to 15 minutes prior to the accident; and there was no evidence, except plaintiff's testimony, that the traffic light was operating at the time of the accident.

Plaintiff also testified that his speed was 12 to 15 miles per hour as he approached the intersection. He did not look to his right *before* he entered the intersection;[1] after looking to his left, to the front and to the rear (presumably through a rear view mirror), he looked to his right for the first time *when he was one-half to three-quarters of the way through the intersection* and then for the first time saw the fire engine within 12 feet of him. He testified that he did not hear the fire engine's siren or see the flashing lights or any other lights on the fire engine.

Plaintiff further testified that his view to the north (his right) as he entered the intersection was obstructed by various objects, including traffic signs, trees on Main Street and a Chamber of Commerce information booth on Main Street east of the intersection. All of the evidence, including the photographs of the intersection, demonstrates that, despite some obstruction of plaintiff's view

to the north, he could have seen the approaching fire engine if he had looked between the obstructions and if he had looked to the north after he passed the information booth. One of plaintiff's own witnesses, Kathleen Burgess, testified that "maybe five to ten seconds previous to when he was struck he might have seen the fire truck," referring to the interval of time after plaintiff passed the information booth until the collision.

Defendant testified that, accompanied by Captain Fortin in the front seat, he drove the fire engine from the Mansfield Avenue Fire Station, seven and one-half blocks away from the scene of the accident, in the direction of the fire on Maple Street. While driving in a southerly direction on South Willard Street and approaching the intersection with Main Street, the following warning devices were in operation on the fire engine: the penetrator making a wailing sound; the usual fire siren; a flashing red light attached to the dome of the fire engine; two red lights on either side of the cab; and the usual headlights. Defendant saw plaintiff's car east of the information booth and next saw it as it entered the intersection. Defendant testified that he was traveling 20 to 25 miles per hour as he approached

---

[1]. Plaintiff has stated in his brief in this Court that "as he approached the intersection, he *did* look to his right" (Appellant's Brief, 5); and he emphasizes "the only direct evidence on this point . . . from the plaintiff who testified as follows:

'Q. You did look to the right? A. Oh yes, sir. I sure did.'" (Appellant's Brief, 12–13.)

We find this testimony, lifted out of context, unfortunately to have created a mistaken impression on a critical issue in the case.

Plaintiff's complete direct testimony as to when he looked to his right, and in the sequence given, is as follows:

"*Direct Examination* (By Mr. Grussing)

   *    *    *    *    *

Q. Now, tell us, Mr. Simblest, in your own words, just what occurred when you entered that intersection. A. Well, I will repeat. I had the 'green'

light with me, proceeded through, was talf (sic) to ¾ through the street, looked to my right, and within 12 feet of me, here is a big, massive fire truck . . . . (Tr. 17)

  *    *    *    *    *

Q. Did you. as you approached this intersection, did you look to your right at all to see what was coming out of the intersection? A. Coming into an intersection with people ready to go across, with fairly decent eyesight I could see from the left to the right to the front, and I had already watched in the rear before they got to that angle.

Q. You did look to the right? A. Oh, yes, sir. I sure did.

Q. Were you able, or did you see this truck approaching? A. Within '12' feet. It was too late.

Q. The first time you saw it, it was within 12 feet of you? A. That is right." (Tr. 19)

the intersection;[2] he slowed down, applied his brakes and turned the fire engine to his right, in a westerly direction, in an attempt to avoid the collision. He estimated that he was traveling 15 to 20 miles per hour at the time of impact. A police investigation found a 15 foot skid mark made by the fire engine but no skid marks made by plaintiff's car.

The fire engine struck plaintiff's car on the right side, in the area of the fender and front door. Plaintiff's head struck the post on the left side of his car, causing him to lose consciousness for about a minute. He claims that this injury aggravated a chronic pre-existing degenerative arthritic condition of the spine.

Other witnesses who virtually bracketed the intersection from different vantage points were called. Frank Valz, called by plaintiff, was looking out a window in a building on the northeast corner of the intersection; he saw the fire engine when it was a block north of the intersection; he heard its siren and saw its flashing red lights. Kathleen Burgess, another of plaintiff's witnesses (referred to above), was driving in a northerly direction on South Willard Street, just south of the intersection; seeing the fire engine when it was a block north of the intersection, she pulled over to the curb and stopped; she saw its flashing lights, but did not hear its siren. Holland Smith and Irene Longe, both called by defendant, were in the building at the southwest corner of the intersection; as the fire engine approached the intersection, they each heard its warning signals and saw its flashing lights in operation.

Defendant's motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence having been denied and the jury having returned a plaintiff's verdict, defendant moved to set aside the verdict and the judgment entered thereon and for entry of judgment n. o. v. in accordance with his motion for a directed verdict. Chief Judge Leddy filed a written opinion granting defendant's motion.

On appeal plaintiff urges that the district court erred in granting defendant's motion for judgment n. o. v. or, in the alternative, in declining to charge the jury on the doctrine of last clear chance. We affirm both rulings of the district court.

## II.

In determining whether the motion for judgment n. o. v. should have been granted, a threshold question is presented as to the correct standard to be applied. This standard has been expressed in various ways. Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached. See, e. g., Brady v. Southern Railway Company, 320 U.S. 476, 479–80 (1943); O'Connor v. Pennsylvania Railroad Company, 308 F.2d 911, 914–15 (2 Cir. 1962). See also 5 Moore's Federal Practice ¶ 50.02 [1], at 2320–23 (2d ed. 1968); Wright, Law of Federal Courts § 95, at 425 (2d ed. 1970). On a motion for judgment n. o. v., the evidence must be viewed in the light most favorable to the party against whom the motion is made and he must be given the benefit of all reasonable inferences which may be drawn in his favor from that evidence. O'Connor v. Pennsylvania Railroad Company, supra, at 914–15; 5 Moore, supra, at 2325; Wright, supra, at 425.

We acknowledge that it has not been settled in a diversity action whether, in considering the evidence in the light most favorable to the party against whom the motion is made, the court may consider all the evidence or only the evidence favorable to such party and the uncontradicted, unimpeached evidence unfavorable to him. Under Vermont law,

---

2. The maximum speed attributed to the fire engine as it approached the inter-

section was 30 to 35 miles per hour (testimony of Captain Fortin).

all the evidence may be considered. Kremer v. Fortin, 119 Vt. 1, 117 A.2d 245 (1955) (intersection collision between fire engine and passenger car). Plaintiff here urges that under the federal standard only evidence favorable to him should have been considered, citing Wilkerson v. McCarthy, 336 U.S. 53, 57 (1949). As plaintiff reads that case, the court below should not have considered anything else, not even the uncontradicted, unimpeached evidence unfavorable to him. However, we are committed to a contrary view in a diversity case. O'Connor v. Pennsylvania Railroad Company, *supra.*

The Supreme Court at least twice has declined to decide whether the state or federal standard as to the sufficiency of the evidence is controlling on such motions in diversity cases. Mercer v. Theriot, 377 U.S. 152, 156 (1964) (per curiam); Dick v. New York Life Insurance Company, 359 U.S. 437, 444–45 (1959). Our Court likewise has declined to decide this issue in recent cases. Mull v. Ford Motor Company, 368 F.2d 713, 716 n. 4 (2 Cir. 1966); Hooks v. New York Central Railroad Company, 327 F. 2d 259, 261 n. 2 (2 Cir. 1964); Jacobs v. Great Atlantic & Pacific Tea Company, 324 F.2d 50, 51 n. 1 (2 Cir. 1963); Evans v. S. J. Groves & Sons Company, 315 F.2d 335, 342 n. 2 (2 Cir. 1963). See 5 Moore, *supra,* at 2347–50.[3]

Our careful review of the record in the instant case leaves us with the firm conviction that, under either the Vermont standard or the more restrictive federal standard, plaintiff was contributorily negligent as a matter of law; and that Chief Judge Leddy correctly set aside the verdict and entered judgment for defendant n. o. v. O'Connor v. Pennsylvania Railroad Company, *supra,* at 914; Presser Royalty Company v. Chase Manhattan Bank, 272 F.2d 838, 840 (2 Cir. 1959).

Under the Vermont standard which permits all the evidence to be considered, Kremer v. Fortin, *supra,* plaintiff was so clearly guilty of contributory negligence that no further dilation is required.

Under the more restrictive federal standard—i. e., considering only the evidence favorable to plaintiff and the uncontradicted, unimpeached evidence unfavorable to him—while a closer question is presented than under the Vermont standard, we nevertheless hold that plaintiff was guilty of contributory negligence as a matter of law.[4]

In our view, applying the federal standard, the critical issue in the case is whether the fire engine was sounding a siren or displaying a red light as it approached the intersection immediately before the collision. Upon this critical issue, Chief Judge Leddy accurately and

---

3. Assuming that the federal standard were controlling, plaintiff's contention that under that standard evidence introduced by the moving party may not be considered is open to question. Plaintiff relies on Wilkerson v. McCarthy, 336 U.S. 53, 57 (1949). But most Courts of Appeals have held that evidence introduced by the moving party may be considered, distinguishing *Wilkerson* on the ground that FELA cases are *sui generis.* 5 Moore, *supra,* at 2329.

See especially the comprehensive opinion of the Fifth Circuit in Boeing Company v. Shipman, 411 F.2d 365 (5 Cir. 1969) (en banc), holding (1) that in diversity cases a federal rather than state standard should be applied in testing the sufficiency of the evidence in connection with motions for a directed verdict and for judgment n. o. v.; (2) that the FELA standard for testing the sufficiency of the evidence on such motions is not applicable in diversity cases; and (3) that the federal standard to be applied in diversity cases requires the court to consider "all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion." 411 F.2d at 374.

4. We emphasize that, solely for the purpose of testing the validity of plaintiff's claim under the federal standard, we assume without deciding that the federal standard is as stated. But compare, *e. g.,* Boeing Company v. Shipman, *supra* note 3, at 373–75.

succinctly summarized the evidence as follows:

"All witnesses to the accident, except the plaintiff, testified that the fire truck was sounding a siren or displaying a flashing red light. All of the witnesses except Miss Burgess and the plaintiff testified that the fire truck was sounding its siren and displaying a flashing red light."

The reason such evidence is critical is that under Vermont law, 23 V.S.A. § 1033, upon the approach of a fire department vehicle which is sounding a siren or displaying a red light, or both, all other vehicles are required to pull over to the right lane of traffic and come to a complete stop until the emergency vehicle has passed.[5] Since the emergency provision of this statute supersedes the general right of way statute regarding intersections controlled by traffic lights, 23 V.S.A. § 1054, the lone testimony of plaintiff that the traffic light was green in his favor as he approached and entered the intersection is of no moment. And since the emergency provision of 23 V.S.A. § 1033 becomes operative if *either* the siren is sounding *or* a red light is displayed on an approaching fire engine, we focus upon plaintiff's own testimony that he did not see the fire engine's flashing light, all other witnesses having testified that the red light was flashing.

As stated above, plaintiff testified that he first saw the fire engine when he was one-half to three-quarters of the way through the intersection and when the fire engine was within 12 feet of his car. At the speed at which the fire engine was traveling, plaintiff had approximately one-third of a second[6] in which to observe the fire engine prior to the collision. Accepting plaintiff's testimony that his eyesight was excellent, and assuming that the fire engine's flashing red light was revolving as rapidly as 60 revolutions per minute, plaintiff's one-third of a second observation does not support an inference that the light was not operating, much less does it constitute competent direct evidence to that effect. Opportunity to observe is a necessary ingredient of the competency of eyewitness evidence. Plaintiff's opportunity to observe, accepting his own testimony, simply was too short for his testimony on the operation of the light to be of any probative value whatsoever.

■ Plaintiff's testimony that he did not see the fire engine's flashing red light, in the teeth of the proven physical facts, we hold is tantamount to no proof at all on that issue. O'Connor v. Pennsylvania Railroad Company, *supra*, at 915. As one commentator has put it, " . . . the question of the total absence of proof quickly merges into the question whether the proof adduced is so insignificant as to be treated as the equivalent of the absence of proof." 5 Moore, *supra*, at 2320. If plaintiff had testified that he had not looked to his right at all, he of course would have been

---

5. 23 V.S.A. § 1033, in relevant part, provides:

"Except as hereinafter provided, all vehicles shall give the right of way to other vehicles approaching at intersecting highways from the right; and shall have the right of way over those approaching from the left; provided that upon the approach of an ambulance, police or fire department vehicle which is sounding a siren or displaying a red light or both, all other vehicles shall pull to the right of the lane of traffic and come to a complete stop until such emergency vehicle has passed. . . ."

Violation of this statute under Vermont law constitutes prima facie evidence of negligence. Dashnow v. Myers, 121 Vt. 273, 155 A.2d 859 (1959).

6. This is the arithmetical mean (.322 seconds) between the maximum and minimum time intervals, according to the evidence, within which plaintiff could have observed the fire engine travel 12 feet. The minimum interval (.230 seconds) is based on Captain Fortin's testimony that the fire engine was traveling 35 miles per hour as it approached the intersection (*supra* note 2); the maximum interval (.414 seconds) is based on defendant's testimony that he was traveling 20 miles per hour (*supra* pages 3 and 4).

guilty of contributory negligence as a matter of law. We hold that his testimony in fact was the equivalent of his saying that he did not look at all.

Chief Judge Leddy concluded that plaintiff was guilty of contributory negligence as a matter of law; accordingly, he set aside the verdict and entered judgment n. o. v. for defendant. We agree.

### III.

■ Plaintiff urges in the alternative the claim that the district court erred in declining to charge the jury on the doctrine of last clear chance; of course this doctrine is relevant only if plaintiff was guilty of contributory negligence. Since we hold, as did Chief Judge Leddy, that plaintiff was contributorily negligent, his last clear chance claim is properly before us.

Moreover, we reject defendant's contentions that plaintiff failed properly to plead the doctrine of last clear chance (the complaint was amended to reflect such claim); and that plaintiff's requests to charge on the doctrine consisted of mere abstract propositions of law (the trial judge denied plaintiff's request to charge on last clear chance on the ground that "I do not think there is any evidence to support it").

■ We turn directly to whether there was evidence sufficient to warrant charging the jury on the issue of last clear chance. In addition to the usual essential elements of last clear chance, Vermont law requires the existence of a period of time during which *plaintiff*, in the exercise of due care, *could not* have avoided the accident *and* during which *defendant,* in the exercise of due care, *could* have avoided the accident. Spencer v. Fondry, 122 Vt. 149, 152, 167 A.2d 372 (1960).

Plaintiff's claim regarding last clear chance is pegged entirely on the theory that, there being no traffic behind his car, defendant should have seen such absence of traffic and should have had sufficient time to turn the fire engine to his left, rather than to his right, and thus to maneuver it into the space to the rear of plaintiff's car.

We agree with Chief Judge Leddy's ruling, directed precisely to plaintiff's claim in this respect, in refusing to charge on the doctrine of last clear chance:

"The evidence is that, as I recall it, that while there was sufficient space behind the rear of the plaintiff's car and the easterly line of Willard Street, all of the testimony is that at the rate of speed the truck was going and because of the closeness of the two vehicles, it was impossible for the truck to make a maneuvering to go through that space, and that was testified to by the driver and also Miss Burgess who was parked on the opposite side of the intersection."

■ We hold, assuming *arguendo* there was an interval of time during which plaintiff in the exercise of due care could not have avoided the accident, that—based on the proven physical facts regarding the speed of the fire engine and the proximity of the two vehicles referred to above—the overwhelming, uncontroverted evidence demonstrates that defendant in the exercise of due care simply could not have avoided the accident. Spencer v. Fondry, *supra*, at 152.

Affirmed.