Bill JACKSON and Juanita Jackson, Plaintiffs,

v.

SWIFT–ECKRICH, INC., Defendant.

Civ. No. 92–5133.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Oct. 26, 1993.

**1448**

James G. Lingle, Mark W. Corley, Lingle & Corley, Rogers, AR, Clay Fulcher, Strait Law Firm, Dardanelle, AR, for plaintiffs.

James Crouch, Charles Harwell, Cypert, Crouch, Clark & Harwell, Springdale, AR, for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Between September of 1985 and September of 1991 the plaintiffs entered into a series of one-year "floor" contracts in which they agreed to raise turkeys on their farms and sell them defendant, Swift–Eckrich, Inc., a "vertically integrated" turkey processor. The arrangement was that the plaintiffs agreed to purchase from Swift specified numbers of turkey poults to house, place, grow, and care for on their farms. At the end of the growing season for each flock, the turkeys were caught and transported by Swift employees or independent contractors hired by it to the processing plant located in Huntsville, Arkansas, to be processed. After the birds were processed, Swift repurchased the turkeys from plaintiff at a price determined by numerous factors including weight, grade, condemnation, market price, and several other factors specified in the contracts. Under this arrangement, the plaintiffs' ultimate income was determined, at least to a large degree, not only by their performance, but by market conditions at the time the birds were processed.

In September of 1991 the business relationship terminated, obviously not on good terms, and this lawsuit resulted. Plaintiffs, in their complaint and amended complaint, allege numerous causes of action, but it would serve no purpose to delineate them in this opinion. Instead, the court will discuss below those issues which the jury was allowed to consider at the conclusion of a trial which commenced on August 17, 1993, and ended on August 20, 1993.

After ruling on various pretrial motions and motions made during the trial, the court allowed the jury to consider whether the defendant in its dealings with the plaintiffs violated various provisions of the Packers and Stockyards Act (7 U.S.C. § 181 *et seq.*); whether such actions constituted a breach of contract; whether defendant breached an implied warranty of merchantability with respect to the poults delivered; and whether the acts of the defendant constituted common law fraud.

After deliberation, the jury, in answer to specific interrogatories submitted by the court, found in favor of the plaintiffs on each issue submitted with the exception of the implied warranty of merchantability claim. Because the court had, as expressed at the trial, concern about whether the law and the evidence supported certain portions of plaintiffs' claim that the Packers and Stockyards Act had been violated, the jury was asked, in Interrogatory No. 5, to separately specify damages which the jury found were recoverable in respect to certain issues or claims.

Interrogatory No. 5 was completed as follows:

**INTERROGATORY NO. 5:**

(a) STATE THE AMOUNT OF DAMAGES, IF ANY, YOU FIND WERE SUSTAINED BY THE PLAINTIFFS AS A RESULT OF VIOLATIONS OF THE PACKERS AND STOCKYARDS ACT IN CONNECTION WITH [PLAINTIFFS'] CONTENTION THAT DEFENDANT FAILED TO OFFER PLAINTIFFS [PERFORMANCE] CONTRACTS IN THE FOLLOWING YEARS:

(1) 1989 ANSWER: $124,000.00 (AMOUNT)

(2) 1990 ANSWER: $ 56,000.00 (AMOUNT)

(3) 1991 ANSWER: $ 71,500.00 (AMOUNT)

(b) STATE THE AMOUNT OF DAMAGES, IF ANY, YOU FIND WERE SUSTAINED BY THE PLAINTIFFS AS A RESULT OF ANY OTHER VIOLATIONS OF THE PACKERS AND STOCKYARDS.

ANSWER: $50,000.00 (AMOUNT)

(c) STATE THE AMOUNT OF DAMAGES, IF ANY, YOU FIND WERE SUSTAINED BY THE PLAINTIFFS ON THEIR BREACH OF CONTRACT CLAIMS, BREACH OF WARRANTY CLAIMS AND FRAUD CLAIMS.

ANSWER: $50,000.00 (AMOUNT)

| 8/20/93 | Lisa Murphy |
|---|---|
| (DATE) | (SIGNATURE OF FOREPERSON |

Defendant has timely moved for judgment as a matter of law, for remittitur, or for a new trial, and plaintiffs have responded. The attorneys for the parties have well-briefed the issues and the court has carefully considered their arguments and contentions, and is now prepared to rule.

I. *Standard for Considering Motion for Judgment as a Matter of Law and Motion for a New Trial*

Of course, prior to 1991 amendments made to the Federal Rules of Civil Procedure, a Rule 50 motion was a motion for directed verdict or motion for judgment notwithstanding the verdict. The 1991 amendments merely changed the name of these motions, but the standard for application of this rule remains the same.

As stated in 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 at 599 (1971): "The standard for granting judgment notwithstanding the verdict is precisely the same as the standard for directing a verdict." *Id.* (footnote omitted).

Thus, the test that this court must follow in ruling on the motion for judgment as a matter of law is well-stated in 9 Wright and Miller, *Federal Practice and Procedure* § 2524 as follows:

The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party. In determining whether the evidence is sufficient the court is not free to weigh the evidence or to pass on the credibility of the witnesses or to substitute its judgment of the facts for that of the jury. Instead, it must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence.

*Id.* at 543–45 (footnotes omitted).

The Court of Appeals for the Second Circuit, in *Simblest v. Maynard*, 427 F.2d 1

(2d Cir.1970), stated the test that is to be applied in words that have been oft repeated:

> Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.

*Id.* at 4.

The Court of Appeals for this circuit, in *Jeanes v. Milner,* 428 F.2d 598 (8th Cir.1970) advised trial courts that a judgment notwithstanding the verdict should be sparingly granted because to do so deprives the parties of their right to a jury trial. Be that as it may, it is clearly this court's duty to examine the record in the light most favorable to plaintiffs, but it must be examined under the " 'requirements of the governing substantive law for the imposition of liability' " *Kirchoff v. American Cas. Co.,* 997 F.2d 401, 404 (8th Cir.1993), *quoting, Linegar v. Armour of America, Inc.,* 909 F.2d 1150, 1152 (8th Cir. 1990).

As to the standard to be applied in considering motions for a new trial, at least in this court's view the "law" in the Eighth Circuit before the court's decision in *White v. Pence,* 961 F.2d 776 (8th Cir.1992), had been cloudy, if not opaque. *See* our opinion in *U.S. v. Schay,* 746 F.Supp. 877 (E.D.Ark.1990), rev'd, 961 F.2d 776 (8th Cir.1992). As indicated in our *Schay* opinion, this court believes that some of the Eighth Circuit's opinions prior to *Pence* mixed and confused the standards for considering a motion for directed verdict with what should be a distinctly separate and different one when considering a motion for a new trial. However, in *Pence* the Court of Appeals said that: "[T]he trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.' " *Pence,* 961 F.2d at 780, *quoting, Ryan v. McDonough Power Equip.,* 734 F.2d 385, 387 (8th Cir.1984).

■ A remittitur may be granted "when the verdict is so grossly excessive as to shock the court's conscience." *American Business Interiors, Inc. v. Haworth, Inc.,* 798 F.2d 1135, 1146 (8th Cir.1986).

## II. *Packers and Stockyards Act Violation—Performance Contract Issue*

A major thrust of plaintiffs' lawsuit and presentation at the trial involved alleged violations of § 202 of the Packers and Stockyards Act, codified as 7 U.S.C. § 192. That section provides, in pertinent part, as follows:

> It shall be unlawful for any packer with respect to livestock, meats, meat food products, or livestock products in unmanufactured form, poultry, or for any live poultry dealer with respect to live poultry to: .
>
> (a) Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device; or
>
> (b) Make or give any undue or unreasonable preference or advantage to any particular person or locality in any respect whatsoever, or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever; or

7 U.S.C. § 192 (1980 & Supp.1993).

At the close of the evidence, the court ruled that plaintiffs had made a submissible case on whether the above quoted provisions of the Packers and Stockyards Act had been violated by defendant's claimed refusal to allow plaintiffs to change from a "floor contract" to a "performance contract," but expressed concern about whether the law and the evidence supported such ruling, and counsel were advised that, if the jury returned a verdict for plaintiffs on that issue, the court would carefully re-consider the issue if a motion for judgment as a matter of law was timely filed.[1] It was primarily for this reason that the court required the jury to separately consider and specify the damages determined to be attributable to that alleged violation. Additionally, the court instructed the jury in Instruction No. 7 in

---

1. The Court of Appeals for this circuit has suggested that this is usually the better practice. *Dale v. Janklow,* 828 F.2d 481 (8th Cir.1987) and

*Dace v. ACF Industries,* 722 F.2d 374 (8th Cir. 1983).

respect to other alleged violations of the act as follows:

(C) FAILING TO TRANSPORT TURKEYS PROMPTLY AFTER LOADING AND DETERMINING THE GROSS WEIGHT FOR GROWER PAYMENT UPON ARRIVAL AT THE PROCESSING PLANT. PRIOR TO MAY OF 1989 THE REGULATIONS REQUIRED THE GROSS WEIGHT FOR GROWER PAYMENT TO BE DETERMINED PROMPTLY UPON ARRIVAL AT THE PROCESSING PLANT. AFTER MAY OF 1989 THE WORDING OF THE REGULATION CHANGED AND REQUIRED THE GROSS WEIGHT FOR GROWER PAYMENT TO BE DETERMINED IMMEDIATELY UPON ARRIVAL AT THE PROCESSING PLANT; OR

(D) FAILING TO PROVIDE A CONTRACT WHICH CLEARLY SPECIFIES ALL TERMS RELATING TO THE PAYMENT TO BE MADE TO THE POULTRY GROWER INCLUDING THE PARTY LIABLE FOR CONDEMNATIONS, INCLUDING THOSE RESULTING FROM PLANT ERRORS; OR

(E) FAILING TO HAVE QUALIFIED PERSONS OPERATING SCALES AND REQUIRING THEM TO OPERATE THE SCALES IN ACCORDANCE WITH REGULATIONS SPECIFICALLY INCLUDING THE LICENSE NUMBER OF THE TRUCK OR THE TRUCK NUMBER ON THE WEIGHT TICKET AND REQUIRING THAT WEIGHT TICKETS BE USED IN SEQUENCE.

■ Plaintiffs claim that defendant had violated the relevant portions of the Packers and Stockyards Act by refusing to allow plaintiffs to change from a "floor contract" to a "performance contract" proved to be the most rewarding in view of the jury verdict. The court understands the primary difference between these two types of contracts to be that the performance contract is essentially a cost plus arrangement in which the grower does not stand the risk of the market. The jury found, in answering Interrogatory No. 5(a), that plaintiff suffered damages for the years 1989 through 1991 in the total amount of $251,500.00 because of the claimed refusal.

Defendant in its motion for judgment as a matter of law contends that the court should grant it for several reasons. First, and apparently foremost, it contends that the court should invoke the doctrine of "primary jurisdiction" discussed and explained in *McCleneghan v. Union Stock Yards Co.*, 298 F.2d 659 (8th Cir.1962). Additionally, it contends that, if the court does not grant the motion because of that doctrine, it should grant it because the alleged refusal was not a violation of the Packers and Stockyards Act and because, in any event, the jury was not given adequate guidance in the instructions in respect to such violation and that the cause of action on this element was barred by the statute of limitations.

Of defendant's contentions, the "primary jurisdiction" argument is the most troublesome and appears to have the most merit. *McCleneghan, supra,* written by then Eighth Circuit Court of Appeals Judge Harry F. Blackmun and now Supreme Court Justice, explained in some detail the history and development of this doctrine and it would serve no purpose for this court to attempt to do so.

In *McCleneghan,* the trial court was faced with a lawsuit filed by a livestock dealer at the Omaha stockyard for 35 years, in which he claimed that the defendants had violated §§ 1 and 2 of the Sherman Act and § 4 of the Clayton Act, 15 U.S.C. §§ 1, 2 and 15 respectively. It was contended that some of the defendants, members of a trading group, agreed to a scheme under which members, by a coin flip, determined the priority among themselves for the opportunity to bid on stocker and feeder cattle offered at the stockyard. The scheme was operated until it was enjoined by the Eighth Circuit Court of Appeals after affirming an order of the Secretary of Agriculture issued June 18, 1957, prohibiting the practice. It was alleged that, three days later, because of plaintiff's activity in the proceedings culminating in the issuance of the order, the stockyard canceled plaintiff's pen assignment at the Omaha yards. He was thus effectively barred from the purchase in the open market of first class cattle for his own account and for others and

was damaged by lost income and increased costs.

The defendants each filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted, and the trial court dismissed the action, holding that the Secretary of Agriculture had primary jurisdiction to decide the issues raised.

Judge Blackmun first discussed in considerable detail the relevant provisions of the Packers and Stockyards Act and concluded that:

It is thus apparent that the Act and the supplemental legislation of 1950 embrace a comprehensive plan for the supervision of stockyards and market agencies by the Secretary, for the issuance of appropriate orders by him in this area, and for effective enforcement of those orders.

*McCleneghan,* 298 F.2d at 664.

In reaching that conclusion, it was noted that § 304 of the Act, 7 U.S.C. § 205, declared: "It shall be the duty of every stockyard owner and market agency to furnish upon reasonable request, without discrimination, reasonable stockyard services at such stockyard...." *McCleneghan,* 298 F.2d at 663. The opinion goes on to point out that the law requires that, "[r]ates and charges are to be reasonable and nondiscriminatory and any which is unreasonable or discriminatory is 'prohibited and declared to be unlawful.' § 305, 7 U.S.C. § 206." *McCleneghan,* 298 F.2d at 663.

Judge Blackmun also noted that § 312, 7 U.S.C. § 213, was a seemingly catch-all section which declares it unlawful for any stockyard to "engage in or use any unfair, unjustly discriminatory, or deceptive practice or devise in connection with the marketing of livestock in interstate commerce at a stockyard." *McCleneghan,* 298 F.2d at 664.

The Court of Appeals deemed the provisions of § 309 of the Act, 7 U.S.C. § 210, to be important in its determination of the case. That section authorizes a person complaining of a violation by a stockyard owner to apply to the Secretary by petition "at any time within ninety days after the cause of action accrues...." *Id.* A response is required from the Secretary and he is authorized to make appropriate orders including one that the defendant pay damages to the complainant. If the defendant fails to comply with the order of the Secretary, either the Secretary or complainant is authorized to seek court relief. *Id.*

In reaching the decision, the court quoted from Justice Brandeis' decision in *Great Northern Ry. Co. v. Merchants Elevator Co.,* 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922) as follows:

Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission.

\* \* \* \* \* \*

It is required because the inquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission.

*McCleneghan,* 298 F.2d at 665.

The court then went on to hold that the doctrine of primary jurisdiction did not deprive the trial court of jurisdiction in respect to the "flip system" issue since that issue had already been determined by the Secretary of Agriculture and there was no need for employing further administrative expertise in deciding it. However, the court held that the trial court was deprived of jurisdiction by the doctrine of primary jurisdiction to determine the pen cancellation issue. In so doing the court said:

Here, it seems to us, the primary jurisdiction doctrine has clear application. Questions involving the reach of the statutory words 'discrimination' and 'stockyard services,' and the merit of a defense raised against a charge of discrimination, are matters for the Secretary's expertise and are properly assessed by him in the first instance.

*McCleneghan,* 298 F.2d at 670.

The court went on to point out that the doctrine applied even though the provisions of § 308 of the Act, 7 U.S.C. § 209, appeared to specifically give an injured party the right to damages to be enforced either by complaint to the Secretary of Agriculture or by

suit in federal district court, and specifically reserved all "remedies not existing at common law or the statute, . . ." *McCleneghan*, 298 F.2d at 664. In spite of these provisions, the Court of Appeals ruled that the trial court was correct in holding that it did not have primary jurisdiction of the issues raised by plaintiff's complaint. *Id.* at 670.

It appears from an understanding of the *McCleneghan* decision that defendant's contention has merit, at least in respect to the performance contract issue, and that that issue should have first been presented to and decided by the Secretary of Agriculture through appropriate administrative proceedings.[2] The *McCleneghan* decision seems to be directly on point, and the court cannot distinguish it from the facts of this case. Like *McCleneghan*, plaintiffs contend that their cause of action for defendant's failure to provide them with a performance contract was "unfair, unjustly discriminatory," and was a "deceptive practice or device" or the defendants violated the law by making or giving "undue or unreasonable preference or advantage to any particular person or locality" and subjected them to "undue or unreasonable prejudice or disadvantage". 7 U.S.C. § 192.

Just as in *McCleneghan*, it is apparent from the all encompassing provisions of the Packers and Stockyards Act as they apply to the poultry industry, that the Act constitutes a comprehensive plan for the supervision of poultry operations. Not only does § 208 make certain practices unlawful in respect to the poultry industry, substantial amendments were made to the act in 1987 obviously intended to cover the poultry industry in much the same way as the red meat industry had previously been covered by the Act. Section 308, 7 U.S.C. § 209, discussed in Judge Blackmun's opinion, was amended in 1987 so that it not only covered the purchase, sale and handling of livestock but also "the pur-chase or sale of poultry, or relating to any poultry growing arrangement."

Thus, just as in *McCleneghan*, the Act provides in respect to the poultry industry that any person complaining of a violation of the Act is entitled to damages sustained as a consequence of the violation which he may pursue either by complaint to the Secretary of Agriculture or by suit in a district court, and all remedies then existing by statute or at common law are preserved. 7 U.S.C. § 209. Again as in *McCleneghan*, § 309, 7 U.S.C. § 210, gives the Secretary of Agriculture the authority and responsibility to make certain determinations when a complaint is made and may, at any time on its own motion, institute an inquiry. After such inquiry, whether initiated by a complaint or on the Secretary's own motion, he may make appropriate orders, including an order that the complainant be paid damages by the person found to have violated provisions of the Act.

In view of the above, it would appear that the doctrine of primary jurisdiction applies to the performance contract issue in this case unless the court determines that there is no need for the expertise of the Secretary in making the determination to be made. Defendant contends, and the court believes that there is merit in its contention, that a great deal of expertise would be helpful and, in fact, is necessary to determine whether the defendants alleged failure to offer to the plaintiffs performance contracts constituted the defendant engaging in or using "any unfair, unjustly discriminatory, or deceptive practice or device" or constituted the making or giving of "any undue or unreasonable preference or advantage to any particular person or locality in any respect whatsoever" or constituted the subjecting of "any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

---

2. This court recognizes that it held to the contrary in a letter opinion dated October 2, 1992, ruling on a motion for partial summary judgment, on the basis that the determination at issue did not require the expertise of the Secretary. After hearing the evidence in the case, the court has a great deal more information about the intricacies of the determination to be made, and the effect that such determination might have upon the industry as a whole. Under the circumstances which existed at the time, the court simply did not believe that it was appropriate to determine that issue on a motion for a summary judgment. In any event, other issues would have remained for trial.

Surely if the expertise of the Secretary of Agriculture was important and necessary in determining whether it was unfair and unjustly discriminatory for a stockyard to cancel a dealer's pen assignment because he had initiated proceedings which resulted in an injunction against the stockyard, it would be equally helpful and necessary to employ the expertise of the Secretary in determining whether the offering or failure to offer particular contract provisions to growers in the poultry industry was a violation of the Packers and Stockyards Act.

During the trial of this case this court was particularly troubled by the implications of a decision by the court or the jury in respect to this issue. It became obvious to the court that issue was not nearly as simple as it appeared to be on the surface. The court was further troubled by the fact that it saw no way to convey to the jury, which obviously did not have the breadth of knowledge in the poultry industry necessary to determine this issue, any instruction or formulation in respect to how such determination was to be made.

How can one tell a lay jury with little or no expertise in the industry what should be considered to be unfair, unjustly discriminatory, or the giving of an undue or unreasonable preference to some growers or subjecting some growers to undue or unreasonable prejudice or disadvantage? [3] How does one tell a lay jury what all of that means and how to consider the evidence in the context of a complex industry?

How can the jury be instructed so that the members will understand that not all discrimination is banned—just *unjust* discrimination; not all preferences and advantages are outlawed—only those that are *unreasonable*; and that not all disadvantages to a person or locality imposed by the business

practices of the industry or a member of it are illegal—only *undue* or *unreasonable* ones. Even if the jury is told all that in a meaningful way, how can the jury members, without expertise in the industry, make the determination in this respect, after weighing all of the factors present in the industry bearing on those questions? How can a jury determine whether its finding on the issue should be uniformly applied to others in the industry, and how could it be implemented even if it could? Those are the kind of determinations that must be made on complex knowledge of the industry which the jury does not have and could not gain in the course of a relatively short trial.

The court also believes that the expertise of the Secretary would be helpful in determining the competitive effect that a determination such as the one made by the jury would have in the industry. If only this defendant is prohibited from negotiating at arms length with its growers in respect to the kinds of contracts that are signed, will that give a competitive edge to others in the industry?

The questions posed above and others like them can be reasonably determined only by someone with expertise in the industry, and that "someone" is, by law, the Secretary of Agriculture or his designees.

Based on what the court now knows about this issue, it has little doubt but that the doctrine of primary jurisdiction applies and that this issue should first be determined by the Secretary of Agriculture in appropriate proceedings mandated by the Packers and Stockyards Act.[4]

■ Plaintiffs in their response do not dispute that *McCleneghan*, if applicable to this case, dictates that the doctrine of primary jurisdiction would bar recovery on the per-

---

3. Defendants also contend in their motion that the instructions given by the court, particularly Instruction No. 7, did not give the jury necessary aid in this respect, but the court does not believe that the record shows that any specific objection was made on that basis before the jury was instructed.

4. Without intending to decide an issue not before it, the court notes that the Court of Appeals said

in *McCleneghan, supra*, at 670: "The 90 day limitation of § 309, 7 U.S.C.A. § 210, need cause us no difficulty. Even if a direct application to the Secretary were barred, a question we do not now decide, the statute should not operate to prevent reference to the Secretary of a question raised by way of defense in a suit which is itself timely brought. *See United States v. Western Pac. R. Co., supra*, p. 71 of 352 U.S. [59], p. 169 of 77 S.Ct. [161, 1 L.Ed.2d 126]."

formance contract claim. Instead, plaintiffs, relying upon *Arkansas Valley Industries, Inc. v. Freeman,* 415 F.2d 713 (8th Cir.1969), argue that the Secretary of Agriculture does not have administrative jurisdiction over the poultry industry, and, thus, the doctrine is not applicable.[5]

The court believes that plaintiffs, in making this argument, misconstrue and misunderstand the holding of that case and the effect of the amendments to the Packers and Stockyards Act made in 1987. A reading of that case should indicate that the issue was whether the Secretary of Agriculture could apply the hearing and cease and desist order provisions of § 203 of the Act, 7 U.S.C. § 193, to poultry operations in spite of the fact that provision, by its explicit terms, applied only to packers. The Secretary argued that, since § 202 of the Act had been amended in 1935 to make certain unlawful practices enumerated in that section apply also to live poultry dealers, Congress must have simply "forgotten" to amend the hearing and cease and desist provisions of § 203 to also include poultry dealers, so the Secretary was authorized to read the necessary words into § 203 to give him jurisdiction over the poultry industry.

It was argued by the poultry processors, and the Court of Appeals ultimately agreed, that the 1935 amendments and the legislative history in respect to them indicated that Congress did not intend to make the hearing and cease and desist provisions of § 203 applicable to poultry dealers. Instead, by adding the provisions of § 501 through § 505, compiled as 7 U.S.C. § 218 (repealed by the 1987 amendments), Congress intended to develop an entirely different scheme for policing and regulating the poultry industry and enforcing compliance with the law.

Those provisions allowed and authorized the Secretary to designate certain problem cities and localities as areas where licenses would be required in order for a poultry dealer to operate, and a license could be revoked or refused if a poultry dealer had engaged in or was engaging in acts that were declared to be unlawful by the Act.

However, the 1987 amendments obviously were intended to take a different approach in the regulation of the poultry industry. The licensing provisions of the Act added in 1935 were repealed and in their place the first subsection of § 308, 7 U.S.C. § 209(a), was amended to cover the poultry industry.

Thus, as it already existed, § 202, 7 U.S.C. § 192, made it unlawful for poultry dealers to engage in any of the unlawful practices enumerated in that Act, and § 308, 7 U.S.C. § 209, as amended by the 1987 amendment, gave any individual, including persons engaged in the poultry industry who were injured by any unlawful practices, a right to collect damages from the perpetrator.

The provisions of subparagraph (b) of that section were not changed because there was no need to change them since that subsection merely provided that the rights granted in subsection (a) could be enforced either by making a complaint to the Secretary of Agriculture as provided in § 309, 7 U.S.C. § 210, or by suit in federal court. Similarly, § 309, 7 U.S.C. § 210, was also not modified by the 1987 amendments because it was not necessary to do so. It simply but importantly gave the Secretary the authority and the duty to take certain actions when a complaint was made against individuals covered by the Act, including a "dealer," which should certainly, construing the plain terms of the Act, include poultry dealers which had been brought into the coverage of the Act by the 1987 amendments.

Thus, the court believes that the plain and unambiguous language of the Packers and Stockyards Act, as amended, not only applies to the poultry industry, but gives the Secretary of Agriculture considerable authority and duties in respect to the regulation of that industry. Even if the court believed that it was necessary or appropriate to resort to a study of the legislative history to determine

---

5. This court has some special and perhaps nostalgic knowledge about this case since this judge, as a relatively young and totally inexperienced practicing lawyer in his first appearance in any court, developed, briefed, and argued this case both before the trial court in a futile attempt to obtain an injunction, and the Court of Appeals on appeal of a cease and desist order issued by the Secretary after weeks of hearings.

the intent of Congress, the legislative history makes it abundantly clear that Congress intended that the Act apply as explained above. The legislative history of the 1987 amendments explicitly states that the Packers and Stockyards Administration has "jurisdiction over live poultry transactions (*i.e.*, weighing practices and contract compliance)." H.R.Rep. No. 397, 100th Cong., 1st Sess. pt. 3 (1987) 1987 U.S.C.C. & A.N. 855, 1987 WL 61469 (Leg.Hist.).

In view of the above, the court will grant the motion for judgment as a matter of law in respect to the jury verdict awarding plaintiffs $251,500.00 on its performance contract claims, and the judgment already entered shall be considered to be reduced by such amount.

■ Even if the court believed that the Secretary of Agriculture did not have primary jurisdiction in the performance contract issue, it would still grant the motion for judgment as a matter of law because it has determined that, as a matter of law, the claimed actions in respect to the performance contracts were neither deceptive or injurious to competition, nor were they unfair, unjust, or unreasonable.

The relevant provisions of the Act, by their plain and unambiguous terms do not require persons covered by the Act to treat all individuals with whom they deal exactly the same. The Act only prohibits unfair, unjustly discriminatory, or deceptive practices or devices or the making or giving of any undue or unreasonable preference or advantage to any other person or to subject any other person to unreasonable prejudice or disadvantage.

The court is convinced that, even when the evidence adduced at the trial is viewed in a light most favorable to the plaintiffs, a reasonable person could not conclude that the actions in this case were any of those things. Instead, it appears from the evidence that defendant offered performance contracts primarily, if not solely, to individuals who had their own feed mills, and, thus, could control costs of feed and where other reasonable business practices were in place to control costs, and denied the right to a performance contract to those individuals who did not have those business advantages in the raising of turkeys.

After all, any grower with whom defendant did business was not compelled to do business with Swift–Eckrich. The evidence indicated that there were other turkey processing operations in the area. In fact, the plaintiffs had, before entering into the business relationship with Swift–Eckrich, grown turkeys for Cargill, a national concern with a large turkey processing plant in Springdale, relatively near the location of plaintiffs' growing operations, and that Campbell Soup has a plant located in nearby Fayetteville. If plaintiffs were truly concerned about their failure to obtain a performance contract, and if they thought that it was unfair or unjustly discriminatory for them to be denied the right to one, they clearly were not required to negotiate the series of floor contracts with Swift–Eckrich which they signed for a period of several years.

All differences are not prohibited by the unlawful acts enumerated in 7 U.S.C. § 192—only those acts that are unfair, *unjustly* discriminatory or deceptive. Neither are all preferences prohibited—only those that are "undue" or "unreasonable." The evidence, at most, indicates that the plaintiffs may have asked at some point for a performance contract and were denied, but the evidence is clear that they continued to do business with the defendant. They were not deceived so the practice of the defendant was not "deceptive", and since it had a valid business purpose, it was not unreasonable.

Giving the plaintiffs' evidence a light most favorable to them, all that it shows is that Swift–Eckrich offered one class of contracts to people situated as the plaintiffs were, and a different class of contracts to others who were better prepared to control their growing costs. In the court's view, that is clearly not a practice made unlawful by 7 U.S.C. § 192, and reasonable persons could not conclude that· it was. Therefore, even if the court believed that it had primary jurisdiction of this issue, it would grant the motion for judgment as a matter of law.

Defendants also argue that the statute of limitations bars the performance contract

claim. This court earlier in this case held that a four-year statute of limitation applies. *Jackson v. Swift*, 830 F.Supp. 486 (W.D.Ark. 1993).

Plaintiff, Bill Jackson, testified that he first asked for a performance contract at some point before he signed the floor contract executed on August 19, 1988. Since this lawsuit was not filed until August 20; 1992, the claim for 1989 would be barred by the statute of limitations. Thus, even if the court did not find that the motion for judgment as a matter of law should be granted for the reasons set forth above, it would apply the statute of limitations and reduce the performance contract award by $124,000.00, the amount the jury found to be due for the 1989 contract year.

Rule 50(c) of the Federal Rules of Civil Procedure provides that the trial court, when granting a motion for judgment as a matter of law, shall conditionally rule on any motion for a new trial which has been filed "by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial."

For the reasons already stated, the court believes that a miscarriage of justice has taken place in this case in respect to the performance contract issue and the $251,-500.00 awarded to the plaintiffs in respect to that claim "shocks the conscience of the court," particularly when considered in conjunction with the $90,000.00 awarded by the jury in respect to other. claims. The court believes that any reasonable person would be compelled to conclude, after hearing and considering the evidence in respect to plaintiffs' turkey growing operations before, during and after the relationship with defendant including their income from such operations, that they had not in any year or series of years ever made, nor were they likely to ever make the kind of money awarded by the jury.

Additionally, as already indicated, the court doubts that it gave the jury adequate aid in determining the complex issues raised by this claim.

For all of these reasons, even if the Court of Appeals should find that the motion for judgment as a matter of law should not have been granted, this court would grant the motion for a new trial. In this respect, because the evidence and the damage issues are so interwoven, in the event that the granting of the motion for judgment as a matter of law should be reversed and vacated on appeal, this court would grant the motion for a new trial in respect to all issues tried to the jury.

### III. *Other Issues Covered by Defendant's Motions*

As indicated in the preceding section, the court believes and finds that the entire case should be retried in the event that this court's action in respect to the performance contract issue should be reversed and vacated. However, if the striking of the performance contract damages is sustained, the court believes that action has removed the possibility of duplicative damages being awarded, and finds that there was a jury question in relation to other claimed Packers and Stockyards Act violations [6] covered by the damages awarded in Interrogatory No. 5(b) and the breach of contract and fraud claims covered in the damages awarded in Interrogatory No. 5(c). Reasonable minds could differ in respect to them, and the jury decided them in favor of the plaintiffs.

### *ORDER*

On this <u>26th</u> day of October, 1993, upon consideration of the motion for judgment as a matter of law or for a new trial filed herein in behalf of the defendants, and plaintiffs'

---

6. The court has not overlooked defendant's contention that the primary jurisdiction doctrine should bar all damages awarded for Packers and Stockyards Act violations. Since there was evidence from which reasonable jurors could conclude that defendant had acted or failed to act in a myriad of ways during the processing of plaintiffs' birds to plaintiffs detriment, such as misweighing, improper condemnation practices, allowing the birds to remain on the trucks for excessive periods, and the like; and since the court concludes that the expertise of the Secretary is not necessary to determine whether such acts or practices were violations of the act, the court finds that the doctrine does not deprive the court of jurisdiction of those issues.

response thereto, the court finds, as set forth in a memorandum opinion filed contemporaneously herewith. For the reasons set forth in such memorandum opinion, the court hereby vacates the portion of the jury verdict in respect to the performance contract claims totaling $251,500.00 and the judgment entered herein shall be considered to be reduced by such amount.

The court further finds, as set forth in the memorandum opinion, that the court would grant the motion for a new trial in respect to all issues if this court's action in granting the motion for a new trial is reversed and vacated on appeal.

IT IS SO ORDERED.